[This decision has been published in *Ohio Official Reports* at 70 Ohio St.3d 114.]

**AULT, APPELLEE, v. JASKO, APPELLANT.**

**[Cite as Ault v. Jasko, 1994-Ohio-376.]**

*Statutes of limitations—Discovery rule applied to toll statute of limitations where victim of childhood sexual abuse represses memories of that abuse until a later time—One-year statute of limitations period for sexual abuse begins to run, when.*

1.   The discovery rule applies in Ohio to toll the statute of limitations where a victim of childhood sexual abuse represses memories of that abuse until a later time.

2.   The one-year statute of limitations period for sexual abuse in Ohio begins to run when the victim recalls or otherwise discovers that he or she was sexually abused, or when, through the exercise of reasonable diligence, the victim should have discovered the sexual abuse.

(No. 93-810—Submitted April 5, 1994—Decided August 31, 1994.)

Appeal from the Court of Appeals for Lorain County, No. 92CA005344.

———————————

{¶ 1} Appellee-plaintiff, Kathy Ault, age twenty-nine at the time, filed a complaint against her father, appellant-defendant, John Jasko, on October 22, 1991.  Ault alleged in her complaint that Jasko had sexually abused her beginning when she was twelve years old.  On January 22, 1992, Jasko moved to dismiss the complaint pursuant to Civ.R. 12(B)(6) on the ground that the cause of action was barred by the statute of limitations.  Ault responded that her cause of action did not accrue until October 23, 1990, when she was first able to verify that she had been sexually abused and that her father was responsible for the abuse.  On March 24, 1992, the trial court held that Ault's action was barred by the statute of limitations and dismissed the complaint.  The court of appeals reversed the trial court's judgment.

{¶ 2} This matter is now before this court upon an allowance of a motion to certify the record.

———————————

*Cozza & Steuer* and *John T. Price*, for appellee.

*Quandt, Giffels & Buck Co., L.P.A.*, *Walter R. Matchinga* and *Hunter S. Havens*; *James W. Barnhouse* and *Mike J. Scherach*, for appellant.

*Licata & Crosby Co., L.P.A.*, *Louis J. Licata* and *Elizabeth A. Crosby*, urging affirmance for *amicus curiae*, Adult Support for Incest Survivors of Today.

---

**FRANCIS E. SWEENEY, SR., J.**

{¶ 3} This is a case of first impression for this court. We must determine whether the discovery rule applies in Ohio to toll the statute of limitations where a victim of childhood sexual abuse represses memories of that abuse until a later time. For the following reasons, we find that it does apply and, accordingly, affirm the judgment of the court of appeals.

{¶ 4} Initially, we must address which statute of limitations applies to appellee's cause of action against Jasko. Appellee's complaint alleges that Jasko negligently, recklessly, and/or intentionally caused her serious emotional distress. Appellee also alleged that the acts of Jasko were intentional, malicious, willful and wanton. However, all of these claims were premised upon Jasko's alleged sexual abuse of his daughter during her minority, commencing approximately when she was twelve. We recently answered the question of which statute of limitations applies to such acts of sexual abuse in *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 629 N.E.2d 402. In *Doe*, at paragraph one of the syllabus, we held that a cause of action premised upon acts of sexual abuse is subject to the one-year statute of limitations for assault and battery. This court held: "The fact that appellant pled negligence and intentional infliction of emotional distress cannot be allowed to mask or change the fundamental nature of appellant's causes of action which are predicated upon acts of sexual battery." *Id.* at 537, 629 N.E.2d at 407.

{¶ 5} Now that we have determined that the one-year statute of limitations applies to appellee's cause of action, we note that pursuant to R.C. 2305.16, the limitations period could not have been triggered on appellee's claim before she reached the age of majority, which is eighteen years old. Consequently, a minor who is aware of the sexual abuse at the time he or she reaches the age of majority has only one year from that date to assert any claims against the perpetrator arising from the sexual abuse. *Id.* at paragraph two of the syllabus. However, in the present case, appellee alleges that she repressed her memory of

the sexual abuse until she was approximately twenty-nine years old, on October 23, 1990, when she was able to verify that she had been sexually abused and that her father was responsible for the abuse. Appellee filed her claim on October 22, 1991, within one year of her alleged verification that she had been sexually abused by appellant. Thus, we must now address whether the discovery rule tolls the running of the statute of limitations where appellee alleges that her knowledge of the sexual abuse was repressed until after her eighteenth birthday.

{¶ 6} The discovery rule generally provides that a cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he or she has been injured by the conduct of defendant. *O'Stricker v. Jim Walter Corp.* (1983), 4 Ohio St.3d 84, 4 OBR 335, 447 N.E.2d 727; *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438. In *Oliver*, this court stated the rationale behind the application of the discovery rule as follows:

"* * * Use of the discovery rule eases the unconscionable result to innocent victims who by exercising even the highest degree of care could not have discovered the cited wrong. By focusing on discovery as the element which triggers the statute of limitations, the discovery rule gives those injured adequate time to seek relief on the merits without undue prejudice to * * * defendants." *Id.* at 114, 5 OBR at 250, 449 N.E.2d at 441.

{¶ 7} This court has applied the discovery rule in a number of contexts including medical malpractice, legal malpractice, bodily injury caused by exposure to asbestos, DES-related injuries, and injuries arising out of the negligence of a hospital in credentialing a physician. See *Doe*, *supra*, 68 Ohio St.3d at 538, 629 N.E.2d at 408.

{¶ 8} While we have not previously addressed the application of the discovery rule in the context of the present case, the trend in other jurisdictions is to apply the discovery rule where repression of the sexual abuse has prevented the plaintiff from filing a claim within the applicable statutory limitations period. *Callahan v. Iowa* (Iowa 1990), 464 N.W.2d 268; *Doe v. LaBrosse* (R.I.1991), 588 A.2d 605; *Evans v. Eckelman* (1990), 216 Cal.App.3d 1609, 265 Cal.Rptr. 605; *Hammer v. Hammer* (App.1987), 142 Wis.2d 257, 418 N.W.2d 23; *Jones v. Jones* (1990), 242 N.J.Super. 195, 576 A.2d 316; *Meiers-Post v. Schafer* (1988), 170 Mich.App. 174, 427 N.W.2d 606; *Osland v. Osland* (N.D.1989), 442 N.W.2d 907.

{¶ 9} In *Osland*, 442 N.W.2d 907, the North Dakota Supreme Court applied the discovery rule to a case brought by a twenty-two-year-old plaintiff against her father for sexual abuse that occurred when the plaintiff was between the ages of ten and fifteen. The court recognized that plaintiff experienced "severe emotional trauma" that "resulted in her being unable to fully understand or discover her cause of action during the applicable statutory limitations period." *Id.*, 442 N.W.2d at 909.

{¶ 10} Likewise, in *Evans*, *supra*, 216 Cal.App.3d at 1616, 265 Cal.Rptr. at 609, the court applied the discovery rule to an action based on a parent's sexual abuse of plaintiffs as children. The court stated the following in support of its decision:

"It has been widely recognized that the shock and confusion engendered by parental molestation, together with the parent's demands for secrecy, may lead a child to deny or block the traumatic events from conscious memory, or to turn the anger and pain inward so that the child blames himself or herself for the events." *Id.* at 1615, 265 Cal.Rptr. at 608, citing Comment, Adult Incest Survivors and the Statute of Limitations: The Delayed Discovery Rule and Long-Term Damages (1985), 25 Santa Clara L.Rev. 191, 192-195.

{¶ 11} Finally, the Supreme Court of Iowa in *Callahan*, *supra*, 464 N.W.2d at 271-272, discussed the reasoning behind applying the discovery rule in such cases as follows:

"There is a phenomenon among sex abuse victims, sometimes referred to as 'Post-Traumatic Stress Disorder,' which causes victims to repress information regarding the abuse * * *. "* * * This repression syndrome, together with other considerations of fairness, have prompted courts to apply the discovery rule liberally in child sex abuse cases."

{¶ 12} This court has recognized the unique character of child sex abuse cases and the need to toll the statute of limitations in *State v. Hensley* (1991), 59 Ohio St.3d 136, 571 N.E.2d 711. This court held that for the purposes of the statute of limitations for criminal prosecutions, "the corpus delecti of crimes involving child abuse or neglect is discovered when a responsible adult, as listed in R.C. 2151.421, has knowledge of both the act and the criminal nature of the act." *Id.* at syllabus. In formulating this holding, we recognized the problems of "internalization" for child victims and the fact that "the mental and emotional anguish that the victims suffer frequently inhibits their ability to speak freely of the episodes of abuse." *Id.* at 138-139, 571 N.E.2d at 714.

{¶ 13} In the present case, defendant argues that application of the discovery rule to this type of case is unfair to defendants in light of the lack of enduring physical evidence and potential reliance on expert psychiatric testimony to prove liability and damages. However, we find that application of the discovery rule will not cause defendants undue prejudice, as plaintiffs still bear the burden of proving their claims. Also, defendants will be able to present expert testimony to rebut testimony offered by plaintiffs. Furthermore, application of the discovery rule is fair to defendants in light of the hardship that would be visited upon plaintiffs by refusing them a remedy for an injury they were unaware existed until after the expiration of the statute of limitations. Plaintiffs with valid claims should not be denied the opportunity to prove that repression of memory precluded them from bringing their claims within the statute of limitations period. Thus, in balancing the equities between defendant and plaintiff, we find that the burden placed on the defendant is much less than the greater injustice that the plaintiff would suffer. See *Oliver*, *supra*.

{¶ 14} We conclude that the discovery rule applies in Ohio to toll the statute of limitations where a victim of childhood sexual abuse represses memories of that abuse until a later time. The one-year statute of limitations period for sexual abuse in Ohio begins to run when the victim recalls or otherwise discovers that he or she was sexually abused, or when, through the exercise of reasonable diligence, the victim should have discovered the sexual abuse.

{¶ 15} Accordingly, the court of appeals properly concluded that the trial court's granting of defendant's Civ.R. 12(B)(6) motion to dismiss was improper. Based on the complaint, appellee filed her action within a year of her discovery that she had been sexually abused by her father.

*Judgment affirmed.*

A.W. SWEENEY, DOUGLAS, RESNICK and PFIEFER, JJ., concur.

MOYER, C.J., and WRIGHT, J., separately dissent.

————————————

**ALICE ROBIE RESNICK, J., concurring.**

{¶ 16} I concur since I am satisfied that sufficient scientific evidence verifies that incidents of repressed memory in child sexual abuse cases do occur. Therefore, this court

should not dismiss the phenomenon out of hand. At the same time, it is appropriate to approach the subject with caution.

{¶ 17} I emphasize that this case comes to us to review a trial court's granting of a Civ.R. 12(B)(6) motion to dismiss. Therefore, we are required to accept the allegations of the complaint as true. In her complaint, Kathy Ault claims that she repressed memories of the sexual abuse perpetrated upon her by her father during her minority until she began to recover the memories in 1990 and verified them on October 23, 1990, and demands judgment against her father for that abuse. By granting the motion to dismiss, the trial court found that plaintiff could prove no set of facts entitling her to recovery, even though she brought suit within one year of her alleged recovery of memory.[1] If we were to uphold the trial Court's judgment, it would mean that repression of memory of sexual abuse as a child by a plaintiff over the age of nineteen could never overcome the statute of limitations. I am not prepared to totally slam the door to our courtrooms shut on all plaintiffs claiming repressed memory of sexual abuse who seek redress after their nineteenth birthday. We must leave the courthouse door ajar for the plaintiff with a valid claim who repressed his or her memory.

{¶ 18} Even if one is troubled by the potential unreliability of recovered memories, as I am, this case is not one for the expression of skepticism. We are not finding that accrual of the cause of action must be delayed in every case alleging that a plaintiff has recovered a repressed memory of sexual abuse.[2] We merely find, taking the allegations of appellee's complaint as true, that the trial court erred in granting the Civ. R. 12(B)(6) motion to dismiss, because a discovery rule is appropriate in the proper case. Whether this is such a case is not a question before us at this time.

---

1. Since the trial court granted the motion to dismiss, the judge did not consider any of the facts of this case beyond the face of the complaint; otherwise, the court would have had to convert the motion into one for summary judgment before ruling on it. The trial judge thus found that plaintiff's claim of sexual abuse (accompanied by her allegation that she had recovered a repressed memory) was barred by the statute of limitations without regard to the circumstances surrounding the creation or recovery of the memory.

2. It appears that the concept of delayed accrual of a cause of action may differ somewhat from the concept of tolling of a statute of limitations. However, as this court has in the past used the concepts interchangeably to mean essentially the same thing (see, generally, *Melnyk v. Cleveland Clinic* [1972], 32 Ohio St.2d 198, 61 O.O.2d 430, 290 N.E.2d 916; *Doe v. First United Methodist Church* [1994], 68 Ohio St.3d 531, 629 N.E.2d 402), I do not focus on the distinction at the present time, other than pointing out that a difference exists.

{¶ 19} Paragraph two of the syllabus requires that upon remand, when this case proceeds beyond the allegations of the complaint, questions of fact will exist as to when the victim (appellee) "recall[ed]" or "otherwise discover[ed]" or "should have discovered" the alleged abuse. When those questions are answered, it will be possible for the trial judge to rule on the effect of the statute of limitations on appellee's claim. If appellee overcomes the statute of limitations obstacle, she will have an opportunity to prevail on the merits of her claim.

{¶ 20} Since this case comes to us only on appellee's complaint, it would be pure speculation to give guidance to the trial court concerning standards to be applied to determine when appellee actually "recall[ed]" or "otherwise discover[ed]" or "should have discovered" the alleged abuse. Those standards will commence to be established in this case on remand, and will gradually evolve in other future cases. It is not possible at this time to establish workable standards which would govern all future cases.

{¶ 21} I agree with the dissenting opinions that the General Assembly is the most appropriate body to establish a discovery rule in child sexual abuse cases. However, I believe that until the General Assembly chooses to act this court is capable of interpreting the relevant statute of limitations to allow potentially valid claims to proceed. Doing nothing would penalize the individual who has subconsciously invoked a coping mechanism to survive the effects of cruel abuse. I am impressed by the argument that "the law should not protect perpetrators who successfully traumatize their victims into repression." Ernsdorff & Loftus, Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression (1993), 84 J. Crim. L. & Criminology 129, 145.

DOUGLAS, J., concurs in the foregoing concurring opinion.

_____

**MOYER, C.J., dissenting.**

{¶ 22} At times, courts and judges are presented with issues that enable, if not require, us to demonstrate a restrained exercise of our considerable power. A case born of a dispute between two parties may require a decision with far-reaching and broad application to all of society. The dispute between Kathy Ault and her father, John Jasko, has produced such a case in the courts of Ohio. One can imagine few crimes that engender more empathy for the victim than a child who has been assaulted and battered by a parent.

{¶ 23} Assuming that monetary damages rather than, or perhaps in addition to, counseling and reconciliation represent the appropriate "remedy" for such alleged criminal conduct, we are presented with the issue clearly stated in the majority opinion: Does the discovery rule apply to toll the statute of limitations where a victim of childhood sexual abuse represses memories of that abuse until a later time? The majority opinion announces a rule of law that would permit a person at any age after any lapse of time between the alleged sexual abuse and the revived memory of such abuse to sue the alleged abuser for money damages. If that is to be the law of Ohio, it is the General Assembly that should declare it as such rather than this court.

{¶ 24} The authorities cited in the dissenting opinion of Justice Wright are most persuasive. We simply do not have in the record in this case sufficient scientific, empirical or other information from which to craft a rule of law that will protect those accused of being abusers and those who have been abused or believe they have been abused as children. The proper forum to determine such issues is in the General Assembly where all views, all relevant information, all scientific data, and all empirical studies can be presented, reviewed and debated by those who have an interest in the issue. That process did not occur, nor could it have occurred, in the case before us.

{¶ 25} There probably will be a day, as there has been regarding the forensic use of DNA, when courts can be given reliable, competent information on the issue of repressed memory. That day is not here. We should dispose of this case with a strong dose of judicial restraint. Until the General Assembly acts on the issue, we should apply our holding in *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 629 N.E.2d 402, and hold that Kathy Ault's cause of action for assault and battery against John Jasko should have been filed within one year after the date of her eighteenth birthday.

{¶ 26} I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

_____

**WRIGHT, J., dissenting.**

{¶ 27} Today the majority applies a rule of discovery to toll the statute of limitations in cases alleging childhood sexual abuse where the alleged victim claims to have repressed the memory of the abuse until a later time. Consequently, the majority adopts a rule of accrual based on "when the [alleged] victim recalls or otherwise discovers" the earlier abuse, regardless of the conditions under which the alleged victim subsequently recovers the repressed memory. Because I believe the methods used by psychologists and psychoanalysts to retrieve repressed memories are unreliable and are not sufficiently established to have gained a general acceptance in the fields of either forensic or clinical psychology, I respectfully dissent.

{¶ 28} This case presents a very troubling issue, one which evokes deep and conflicting emotions. If reports of the prevalence of childhood sexual abuse are true, our decision today will have far-ranging consequences. Most of these cases pit family members against family members in a painful confrontation. I struggled at length with this issue before I finally arrived at my current position. I am quite disturbed by the majority's unsystematic treatment of its decision to extend a rule of discovery to these "repressed memory" cases without fully discussing all the issues, including the fact that there is sharp disagreement in the psychology community as to whether a repressed memory actually can be retrieved and, if it can, whether the memory is accurate. Because the majority has failed to do so, I feel compelled to offer the following discourse.[3]

{¶ 29} I must note first that most studies dealing with the memory of children indicate that a child's first memories do not occur until about the age of three or four and that adults have no recall of specific events that occurred before the age of two. Encyclopedia of Learning and Memory (1992) 26-29. Moreover, studies have shown that while all three stages of memory—perception, retention, and retrieval—are susceptible to influence and suggestion, the last stage, retrieval, is especially prone to new inputs and

_____

3. The following material has been adapted from two scholarly articles, particularly from a very recent law review article co-authored by Dr. Elizabeth F. Loftus, Professor of Psychology and Adjunct Professor of Law at the University of Washington. She is considered one of the leading authorities on memory.

suggestive questioning. Ernsdorff & Loftus, Let Sleeping Memories Lie? Words of Caution About Tolling the Statute of Limitations in Cases of Memory Repression (1993), 84 J. Crim. L. & Criminology 129, 155-158.

{¶ 30} It is undisputed that memory may be repressed. Repression can be caused by extreme physical injury (such as that experienced by the "Central Park Jogger" who was brutally beaten and repeatedly raped and yet retains no memory of the incident), and by sheer mental shock where there is little or no physical injury, such as a war veteran who represses memories of battle even though he or she personally was not injured. *Id.* at 133. Thus, undeniably there are also adult survivors of childhood sexual abuse who have repressed memories of those experiences due, for example, to severe psychological shock.

{¶ 31} It is widely accepted by scientists that children are more likely to repress memories of sexual abuse when that abuse occurs under certain circumstances. For instance, experts tend to agree that a child who is sexually abused at an early age has a greater likelihood of repressing the memory than a child who is abused at an older age. *Id.* at 137. Likewise, children who experience a particularly violent or intrusive type of abuse and those who are abused over a prolonged period of time are more likely to repress. *Id.*

{¶ 32} But while scientists generally agree that memories can be repressed, admittedly there are few empirical data demonstrating exactly what occurs during the three stages of memory regarding those memories which have been repressed. *Id.* at 133. In fact, there is little agreement among scientists about whether a repressed memory can be retrieved and, if it can, whether the memory retrieved is an accurate product. *Id.* at 154-155.

{¶ 33} The reason for the disagreement in the psychotherapeutic community can better be understood by examining the manner in which repressed memories are retrieved. Recovered memories can be classified broadly into two categories: those emerging spontaneously and those retrieved with the aid of a professional, such as a psychologist or psychoanalyst. *Id.* at 137-138. Kanovitz, Hypnotic Memories and Civil Sexual Abuse Trials (1992), 45 Vanderbilt L.Rev. 1185, 1216. While I have concerns about the reliability of recovered memories in both categories, it is the latter one that I especially want to focus on because the plaintiff in this case claims to have recovered memories of childhood sexual abuse after having consulted a therapist. Accordingly, my principal concern with the

majority's opinion is that it makes no distinction between memories recovered naturally and those retrieved by psychotherapeutic professionals.[4] Further, the majority cites no hard science in support of its position.

{¶ 34} The instant case is typical of the type of repressed memory cases confronting our courts. The patient, who most often is a woman, seeks treatment for bulimia or some other psychological disorder. Sleeping Memories, *supra*, at 139. See, also, Loftus & Rosenwald, Buried Memories/Shattered Lives, (Nov.1993), 79 A.B.A.J. 70, 71. The therapist expresses to the patient that her condition may be the result of a traumatic event in her past of which she has repressed all memory because it is too painful, and may even suggest that the patient's behavior is typical of someone who was sexually abused as a child. Sleeping Memories, *supra*, at 158-159. The therapist then will assist the patient in recalling her memory so that she can better deal with her disorder. *Id.* at 139. In helping patients recover repressed memories, therapists employ various memory enhancement techniques such as hypnosis, the drug sodium amytal, and dream analysis. Buried Memories/Shattered Lives, *supra*, at 72-73.

{¶ 35} But a growing body of evidence indicates that many of these "repressed" memories of sexual abuse may be implanted in patients' minds, unwittingly or otherwise, by therapists' suggestions. Hypnotic Memories, *supra*, at 1218. The problem is compounded by the fact that therapists have little, if anything, by way of guidelines to follow and administer these techniques with little uniformity. Sleeping Memories, *supra*, at 159-161. Further complicating the issue is the lack of clinical case studies supporting the concept of repression. *Id.* at 134. This is not surprising, however, given the ethical implications of reproducing in an experimental setting the trauma necessary to induce repression. *Id.*

{¶ 36} Some variation in memory retrieval methods, however, can be explained. Psychotherapists who engage in recovered memory methods are considered either forensic or clinical. Hypnotic Memories, *supra*, at 1217-1218. Each group uses different techniques in attempting to retrieve a repressed memory because each group is attempting to accomplish something fundamentally different. The forensic psychotherapist is

---

4. At present I decline to address the situation of an adult who naturally and without the aid of a therapist recovers a repressed memory, because that situation is factually, and therefore perhaps legally, different from the one we face today.

typically trying to elicit information that will be admissible at trial and, therefore, will not "prepare" the patient, make suggestions, or ask leading questions during therapy. See *id.* at 1217-1218. The clinician's purpose, however, is completely different. The clinician's goal is rehabilitation. The treatment program is provided solely to benefit the patient. If a patient's rehabilitation can be accomplished by assisting the patient to recall a traumatic memory heretofore repressed, whether the memory is fact or fantasy, the clinician will encourage the patient to recall that memory in whatever form. *Id.* at 1218. For it is not necessarily the recalling of an accurate memory with which the clinician is concerned, but with the patient's overall rehabilitation. *Id.* For example, in attempting to rehabilitate patients by helping them recall a traumatic memory, clinicians may reveal their own expectations before the session about the information they expect to recover, ask leading questions, and encourage patients to use their imagination. See *id.* at 1218-1219. As noted above, none of these techniques is appropriate in the forensic setting.

{¶ 37} In my view, there are unmistakable parallels between the practice of retrieving repressed memories and the science of polygraphy. Courts consistently have been reluctant to accord credibility to the results of a polygraph test. This reticence can be traced back to the landmark case of *Frye v. United States* (C.A.D.C. 1923), 293 F. 1013, in which the court stated that a scientific technique from which a deduction is made must be sufficiently established to have gained general acceptance in the particular field to which it belongs. This axiom has since been adopted by most courts as the standard in determining the admissibility of evidence based on a particular scientific technique. And while the United States Supreme Court has recently ruled that in federal trials Frye's "general acceptance" test, heretofore the exclusive test for admitting scientific evidence, was superseded by the adoption of the Federal Rules of Evidence, the court went on to state that, under the Rules, courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable," and that "[w]idespread acceptance can be an important factor in ruling particular evidence admissible, and 'a known technique that has been able to attract only minimal support within the community' *** may properly be viewed with skepticism." *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. __ , 113 S.Ct. 2786, at 2795 and 2797, 125 L.E.2d 469, at 480 and 483.

{¶ 38} It is my belief that, like polygraphy, the practice of memory recovery is fraught with unreliability and, when used in the judicial system, should receive the same skepticism and critical examination given to the use of polygraphy. Not unlike the science of polygraphy, memory retrieval places unusual responsibility on the examiner. Based on the foregoing, I can only conclude that the practice of memory retrieval is not reliable and is not sufficiently established to have gained general acceptance in the psychotherapeutic community, and, therefore, that we should not recognize those methods in our courts at present.

{¶ 39} I decline here, however, to engage in a discussion of any single solution, of which there are several, to this problem. Suffice it to say, it is my sincere belief that the resolution of this issue lies with the legislature and not the judiciary. The Ohio General Assembly is the appropriate body to conduct hearings, consider expert testimony and, most important, fashion standards. Thus, at this time I would not create a common-law rule of discovery and accrual in cases alleging sexual abuse where the alleged victim claims to have recovered, with the aid of a therapist, a repressed memory of childhood sexual abuse.

{¶ 40} The particular facts of this case illustrate my concern. The plaintiff here sought professional help for depression and anxiety. Her treatment included therapy and medication from a social worker, a psychologist and a psychiatrist. Although she does not indicate the period of time over which the alleged abuse occurred, she acknowledges that the abuse did not begin until she was older, age twelve. Therefore, while her therapy may have helped her in recovering from her disorder, my reservations regarding the reliability of memory retrieval methods used by psychotherapists, and their consequent results, warrant that I caution against adoption of a discovery rule in this case.

{¶ 41} For the foregoing reasons, I would reverse the judgment of the court of appeals and sustain the trial court's grant of defendant's motion to dismiss.