Plaintiff-appellant Kim Francis appeals from the trial court's summary judgment in favor of defendants-appellees Shale S. Sonkin, Esq. and his law firm arising from plaintiff's claim of legal malpractice. Plaintiff asserts there were genuine issues of material fact precluding summary judgment and the trial court erred in not giving a Supreme Court decision retroactive application. We find no error and affirm.
Plaintiff was born in 1955 and was raised in Solon, Ohio. Her mother, Nancy Johnson, married Ted Johnson, Sr. in 1964. Ted Johnson, Sr. and his three children, including Ted Johnson, Jr., lived in the same house with plaintiff. Plaintiff claims that her step-brother, Ted Johnson, Jr., started sexually abusing her when she was eight or nine-years-old and that the abuse continued until she was nineteen or twenty years old. Plaintiff alleges that Ted, Jr. sexually abused her on hundreds of occasions over this time period, many of which occurred in the presence of her step-sister with whom she shared a bedroom. The abuse originally began as fondling and digital penetration and later escalated to vaginal, anal and oral intercourse which ended approximately in mid 1976. However, the victim's memories of this abuse were allegedly repressed until January or February 1992.
On October 8, 1992, plaintiff first contacted and met with defendant Shale Sonkin after receiving his name from the referral list of the Cleveland Bar Association. Plaintiff informed Sonkin about the sexual abuse by her step-brother and that her mother and step-father were aware of the abuse. Plaintiff contends that she inquired about the possibility of legal claims against these family members, expressed concern about the statute of limitations, but Sonkin advised her that they "had plenty of time to get the [required] material." Sonkin asserts that plaintiff never requested that he pursue these claims or file a lawsuit because she was not sure what she wanted to do and that she did not know if she was up to pursuing the case. Plaintiff paid $200 for her consultation. Sonkin urged her to prepare a chronology of events and obtain statements or other corroborating evidence from relatives or witnesses. In late February 1993, plaintiff sent Sonkin a letter from her half-brother and two cassette tapes she made detailing the various acts of abuse.
In September/October 1993, plaintiff became dissatisfied with Sonkin and, upon recommendation of her psychiatrist, consulted attorney Ellen Gesmer in New York City. Ms. Gesmer sent Ted, Jr. a letter and performed some unsuccessful settlement discussions with his attorney. However, Ms. Gesmer eventually advised plaintiff that she could write a letter presenting her claims, but that plaintiff would have to retain counsel in Ohio to pursue further litigation.
On April 24, 1994, plaintiff filed the underlying complaint asserting abuse claims against her family members (C.P. No. 269350). On May 10, 1994, plaintiff entered into a formal contingency fee agreement with Licata Crosby, L.P.A. and William Crosby confirming the representation in pursuing claims against her family members. On August 31, 1994, the Ohio Supreme Court issued its decision in Ault v. Jasko, 70 Ohio St.3d 114, which held that the discovery rule applied to repressed memory/sexual abuse cases, giving the victim one year to file suit after the memories are revived. On September 30, 1994, plaintiff filed the instant legal malpractice claim against Sonkin and his law firm. On January 26, 1995, the trial court granted defendants' motion to stay the instant malpractice action pending the resolution of the underlying sexual abuse case against plaintiff's relatives.
On November 3, 1995, the plaintiff settled with her family members and dismissed with prejudice the underlying sexual abuse case. Plaintiff settled her claims against Ted Johnson, Jr. for $60,000 and a letter of apology. Plaintiff also ultimately accepted $150,000 from her mother. Plaintiff never recovered any money from Ted Johnson, Sr. because he filed for bankruptcy and had no assets. Plaintiff argues herein that these settlements were significantly lower than their true value because the family defendants had a statute of limitations defense resulting from Sonkin allowing the statute of limitations to expire on her abuse claims. Pursuant to plaintiff's motion, on February 25, 1997, the trial court lifted the stay on the instant case.
On April 2, 1998, defendants filed a motion for summary judgment arguing that: (1) they owed no duty to plaintiff to accurately predict a change in the law tolling the statute of limitations; (2) plaintiff's own sworn testimony established that she never asked defendants to file a complaint on her behalf; and (3) plaintiff's retention of Ms. Gesmer constituted an intervening and superseding cause of any alleged damages. On June 16, 1998, after further briefing, the trial court granted defendants' motion for summary judgment with an opinion.
The trial court held that the statute of limitations on plaintiff's sexual abuse claims (R.C. 2305.111) against Ted, Jr. expired in 1977, one year after the abuse ceased in 1976 when plaintiff was approximately twenty-one years old. It also found the two-year statute of limitations (R.C. 2305.10) for negligent supervision expired against her mother in 1978. Therefore, the trial court held that the statutes of limitations on plaintiff's claims expired long before Sonkin began his representation of plaintiff in October 1992. The trial court further held that Sonkin could not be found liable for legal malpractice when the legal points involved were in doubt at the time the legal services were performed and it was speculative as to whether the law would be changed until the Supreme Court's decision in Aultv. Jasko, supra.
This timely appeal followed.
We will address Assignments of Error I and II together because we find they are interrelated.
 I. THE TRIAL COURT ERRED IN DETERMINING THAT THE OHIO SUPREME COURT'S DECISION IN AULT SHOULD NOT BE APPLIED RETROACTIVELY.
 II. THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER APPELLEES' CONDUCT FELL BELOW THE STANDARD OF CARE AS ESTABLISHED BY EXPERT TESTIMONY FOR ATTORNEYS PRACTICING IN A DEVELOPING AREA OF THE LAW.
Appellate review of summary judgments is de novo. Grafton v.Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La PineTruck Sales Equipment (1998), 124 Ohio App.3d 581, 585. The Ohio Supreme Court recently restated the appropriate test inZivich v. Mentor Soccer Club (1998), 82 Ohio St.3d 367, 369-70 as follows:
 Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-59.
The essential elements of a legal malpractice claim were described in Vahila v. Hall (1997), 77 Ohio St.3d 421, syllabus:
 To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss. (Krahn v. Kinney [1989], 43 Ohio St.3d 103, 538 N.E.2d 1058, followed.)
"The existence of a duty in a negligence action is a question of law for the court to determine." Mussivand v. David (1989),45 Ohio St.3d 314, 318; Rohme, Inc. v. Sprint International Com.
(1996), 115 Ohio App.3d 723, 729. The critical issue in this case therefore is whether attorney Shale Sonkin had a duty toward his client to take some action to bring plaintiff's claim before the later declared one-year statute of limitations expired. We agree with the trial court that he had no such duty given the law applicable at the time.
In plaintiff's underlying case, she asserted claims for sexual abuse against Ted, Jr., and claims for negligent supervision and negligent and intentional infliction of emotional distress against her parents, Ted, Sr. and Nancy Johnson. All of these claims arose from the sexual abuse she suffered between approximately 1963 and 1976.
It is undisputed that the one-year statute of limitations pursuant to R.C. 2305.111 applied to the claims of sexual abuse by the step-brother, Ted Johnson, Jr. "* * * a cause of action premised upon acts of sexual abuse is subject to the one-year statute of limitations for assault and battery." Ault v. Jasko
(1994), 70 Ohio St.3d 114, 115, citing Doe v. First UnitedMethodist Church (1994), 68 Ohio St.3d 531. The negligence claim for bodily injury against the mother, Nancy Johnson, for negligence supervision of her children was governed by the two-year statute of limitations (R.C. 2305.10). Primmer v. Vrable
(March 19, 1996), Franklin App. No. 95APE07-936; Fotos v. Wilson
(May 20, 1996), Stark App. No. 1995CA00232.
Therefore, defendants assert that long before plaintiff consulted Sonkin, the one-year limitations period began in 1976 when the abuse ceased and it expired in 1977 as to Ted, Jr., and in 1978, as to Nancy Johnson. Plaintiff, on the other hand, asserts that the limitations period did not begin until, at the earliest, January of 1992 when she first began to recall the sexual abuse and it expired in January/February of 1993, some four or five months after she became a client of Sonkin. According to plaintiff, if defendant Sonkin had been alert to the history of the discovery rule in the Supreme Court and the trends in the field of repressed memories/sexual abuse he would have anticipated the changes in the law heralding the eventual adoption of the discovery rule by the Ohio Supreme Court in such cases on August 31, 1994 in Ault v. Jasko 70 Ohio St.3d 114. Assuming defendant had an obligation to be familiar with the area in which he was consulted, we do not find that the law imposed a duty on counsel to act when the statute of limitations issue was, as yet, unsettled.
At the time of plaintiff and Sonkin's attorney-client relationship in 1992 and 1993, the Supreme Court had not yet recognized the application of the discovery rule to childhood repressed memory/sexual abuse cases. It was not until August 31, 1994, that the Ohio Supreme Court held in Ault v. Jasko (1994),70 Ohio St.3d 114, paragraph one of the syllabus, that "[t]he discovery rule applies in Ohio to toll the statute of limitations where a victim of childhood sexual abuse represses memories of that abuse until a later time." The Court further held at paragraph two of syllabus:
 The one-year statute of limitations period for sexual abuse in Ohio begins to run when the victim recalls or otherwise discovers that he or she was sexually abused, or when, through the exercise of reasonable diligence, the victim should have discovered the sexual abuse.
This decision occurred well after the termination of any attorney-client relationship between plaintiff and Sonkin. The issue before this Court then becomes whether Sonkin can be charged with a duty to plaintiff for failing to predict this change in the law. We hold that he cannot.
We find this appeal controlled by our decision in Howard v.Sweeney (1985), 27 Ohio App.3d 41, as did the trial court, in granting summary judgment for the defendants. In Howard, we held that an attorney cannot be found liable for malpractice for lack of knowledge as to the true state of the law where a doubtful or debatable point is involved; the attorney's acts must be governed by the law that existed at the time; and the failure to predict a subsequent change in a settled point of law cannot serve as a foundation for a claim of professional negligence.
On January 16, 1978, Howard retained the Sweeney law firm to pursue his claim for asbestos exposure against the manufacturer who supplied his employer. Under the prevailing law, the last exposure theory, the claim was barred by the statute of limitations since the last exposure occurred in 1967. The law was subsequently changed by judicial decision to follow the discovery theory, i.e., to permit a claim within two years of the date on which the disease first manifested itself, which in the Howard
case was April 27, 1976. Under the new interpretation, Sweeney
should have filed suit by April 26, 1978, but did not file until six days later, i.e., on May 3, 1978. This Court upheld the granting of summary judgment for the Sweeney firm and stated:
 [A]n attorney will not be held liable for lack of knowledge as to the true state of law where a doubtful or debatable point is involved. Smith, supra. In the case at bar, the plaintiffs have attempted to go beyond that which has already been rejected by attempting to hold the defendants liable for failing to accurately predict future changes in the law. At the time the complaint was filed, the law was clear. The statute of limitations began running on an asbestos claim from the date of last exposure. See Wyler, supra. The fact that the Sweeney firm took the case hoping the law would change does not subject the defendants to liability for failing to accurately predict when and how the law would change. Holding an attorney liable under these facts would place an impossible burden on attorneys who might be willing to accept a case in the hope that the law might be changed. The effect of such a holding would be that attorneys would no longer take such cases, a result which is contrary to public policy. Thus we conclude that an attorney's acts must necessarily be governed by the law as it existed at the time of the act. Counsel's failure to predict a subsequent change in a settled point of law cannot serve as a foundation for professional negligence.
Id. at 43-44. Howard v. Sweeney remains good law today. Holley v.Massie (1995), 100 Ohio App.3d 760, 764; Peterson, Ibold Wantzv. Whiting (1996), 109 Ohio App.3d 738, 745; Thomarios v.Lieberth (Feb. 19, 1992), Summit App. No. CV89061941, unreported.
We recently adhered to our Howard decision in Junke v. Friedman
(Dec. 26, 1996), Cuyahoga App. No. 69883, unreported, where a plaintiff's civil rights action was dismissed after a change in the law regarding the applicable statute of limitation period. In affirming summary judgment, this Court specifically held:
 Before December 21, 1990, only two cases brought to the attention of this Court addressed the statute of limitations issue. Both cases held that the statute of limitations was for six years. [citations omitted]. At this point in time, no controlling case held to the contrary.
 The fact that this Court subsequently held that such claims are governed by a one-year statute does not implicate a breach of duty on behalf of defendants. Generally, attorneys are expected to know the law of the case they are trying. U.S. v. Hook (1986), 781 F.2d 1166. However, "in considering whether an attorney breached his duty, it is important to note that liability will not attach for lack of knowledge as to the true state of the law where a doubtful or debatable point is involved." Howard v. Sweeney
(1985), 27 Ohio App.3d 41, 43 499 N.E.2d 383; Thomarios v. Lieberth (Feb. 19, 1992), Summit App. No. 15229. An attorney does not breach a duty to a client by failing to predict a subsequent change in the law. Howard v. Sweeney, supra. Accordingly, plaintiff failed to establish there was a genuine issue as to whether his attorney breached a duty in relying on a six-year statute of limitations.
 Luna v. Walsh (Oct. 11, 1996), Huron App. No. 4514, unreported, also cited our Howard decision in a suit involving a claim by plaintiff that his attorney was negligent in allowing the court to impose an improper criminal sentence. Plaintiff's claim was premised on a subsequent change in the law. In affirming summary judgment on behalf of the defendant-attorney, the Luna court specifically held:
 Appellant cannot establish the second element [breach of duty] of a legal malpractice case. In 1988, the sentence to be imposed for violation of R.C. § 2937.29 was in doubt. In 1992, the Court of Appeals for the 12th District held that an indeterminate sentence was required. In 1993, the 3rd District Court of Appeals held that a definite term was required. The Supreme Court of Ohio did not settle this point of law until 1994. We refuse to hold an attorney liable for legal malpractice when the legal point involved was in doubt at the time the legal services were performed. The injustice of requiring an attorney to accurately predict future developments in the law should be apparent to all.
There is no question that the issue of repressed memories and the statute of limitations was, at best, an unsettled area of the law during the time period in which Sonkin represented plaintiff. In fact, plaintiff's own attorneys acknowledged this very fact. On August 30, 1994, the very day before Ault v. Jasko was decided by the Ohio Supreme Court, plaintiff's counsel wrote to Sonkin regarding a potential legal malpractice claim and specifically stated:
 After she recalled these memories, Kim contacted you to discuss whether she had a claim against her step-brother for sexual abuse. Since Kim remembered the abuse in January of 1992, she arguably had one year from this date within which to file a claim against her step-brother. As you may be aware, the issue of repressed memories and the statute of limitations is an unsettled area of the law. The Ohio Supreme Court heard oral argument in April 1994 on a case involving repressed memories of childhood sexual abuse. To date, the court has not rendered an opinion in this case.
We agree with the trial court that the defendants breached no duty to the plaintiff in that "the law was unsettled prior to the Ohio Supreme Court's decision in Ault." The trial court was also correct in holding that "[b] ased on the law at the time that Sonkin represented Francis, the statute of limitations for her claim ran in 1977 * * * long before Sonkin began his representation."
"An attorney's acts must necessarily be governed by the law as it existed at the time of the act." Howard, supra at 43. As stated in Luna, supra: "The Supreme Court of Ohio did not settle this point of law until 1994. We refuse to hold an attorney liable for legal malpractice when the legal point involved was in doubt at the time the legal services were performed. The injustice of requiring an attorney to accurately predict future developments in the law should be apparent to all."
It is twenty-twenty hindsight for plaintiff to contend that defendant should have known two years earlier that the Supreme Court would apply the discovery rule in repressed memory/sexual abuse cases. The principal Ohio cases on which plaintiff relies in her Reply Brief (p. 6) to evidence the "trend" toward the discovery rule, Ault v. Jasko (Feb. 24, 1993), Lorain App. No. 5344, unreported and Herald v. Hood (July 21, 1993), Summit App. No. 15986, unreported, were both decided by the same Ninth District Court of Appeals, but after the statute of limitations had already run under the new discovery rule.[1] Indeed, another earlier reported Ninth District case, McKay v. Cutlip
(1992), 80 Ohio App.3d 487, refused to apply the delayed discovery doctrine to a repressed memory/sexual abuse case.Id. at 493.
Furthermore, as recently as March 16, 1994, even the First District Court of Appeals failed to recognize that a change in the law was coming and refused to apply the discovery rule in a suppressed memory/sexual abuse case in sustaining a motion to dismiss under R.C. 2305.111. See Jane Doe v. John Doe (Mar. 16, 1994), Hamilton App. No. A9111349, unreported ("Any broadening of the discovery rule to include claims such as appellant's and the guidelines for its application should come from the Ohio Supreme Court or the legislature.")
In our judgment, it is not good law or good public policy, for that matter, to compel attorneys to file what might be frivolous cases on the chance that the Supreme Court may change the law or subject them to malpractice charges for a failure to do so. The Hobson's choice in such a standard is not one this Court is willing to embrace.
Accordingly, reasonable minds can come to but one conclusion: at the time of their attorney-client relationship, the law regarding the expiration of the statute of limitations barred recovery. Sonkin had no duty to advise plaintiff of the possibility of a change in the law or to accurately predict how the law would change. No genuine issue of material fact existed and summary judgment was properly granted for defendants.
Plaintiff's Assignments of Error I and II are overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
O'DONNELL, J., and BLACKMON, J., CONCUR.
 _____________________ JAMES M. PORTER ADMINISTRATIVE JUDGE
[1] Plaintiff claims her repressed memories were discovered at the earliest in January 1992. She first contacted defendant on October 8, 1992. The one-year statute of limitations would have expired in January/February 1993 even if the discovery rule is retroactively applied. Knowledge of the post-decided cases ofAult v. Jasko and Herald v. Hood would have been of no avail.