**CRAMER et al., Appellants,**

v.

**ARCHDIOCESE OF CINCINNATI et al., Appellees.**

[Cite as *Cramer v. Archdiocese of Cincinnati*, 158 Ohio App.3d 110, 2004-Ohio-3891.]

Court of Appeals of Ohio,
First District, Hamilton County.

Nos. C–030827 and C–040061.

Decided July 23, 2004.

</div>

112

Lopez, Hodes, Restaino, Milman & Skikos, Janet G. Abaray, Gregory A. Keyser, and Calvin S. Tregre, for appellants.

Dinsmore & Shohl, LLP, Mark A. Vander Laan and Kirk M. Wall, for appellee Archdiocese of Cincinnati.

HILDEBRANDT, Presiding Judge.

{¶ 1} Plaintiffs-appellants, Joseph Cramer, Richard Dorn, Robert Wanninger, Nicholas Ferry, Michael Vonderheide, Harry A. Schulte, and Barbara A. Schulte, appeal from the judgments of the Hamilton County Court of Common Pleas dismissing their causes of action against defendant-appellee, the Archdiocese of Cincinnati. In addition, Vonderheide appeals from the trial court's dismissal of his claims against defendant-appellee, John Berning.

{¶ 2} The claims in this case stemmed from sexual abuse that had allegedly occurred at the hands of Berning while he was employed as a priest by the Archdiocese of Cincinnati. Although the appellants did not state the dates of the alleged acts with specificity, they alleged in their complaints that the abuse had occurred during the 1950s and 1960s. According to the allegations, Berning left the employ of the Archdiocese in 1970 and moved to Florida.

{¶ 3} In September 2002, Harry A. Schulte filed a complaint against the Archdiocese, asserting causes of action for respondeat superior; negligent hiring, retention or supervision; breach of fiduciary duty; negligent infliction of emotional distress; intentional infliction of emotional distress; and negligent misrepresentation. His wife, Barbara A. Schulte, asserted a cause of action against the Archdiocese for loss of consortium.

{¶ 4} In October 2003, Cramer, Dorn, Wanninger, Ferry, and Vonderheide filed a complaint against the Archdiocese setting forth causes of action for respondeat superior by ratification or agency; negligent hiring, retention or supervision; breach of fiduciary duty; negligent infliction of emotional distress; intentional or reckless infliction of emotional distress; and negligent misrepresentation. In addition, Vonderheide brought a cause of action against Berning for assault and battery and intentional infliction of emotional distress. Vonderheide is the only appellant to have asserted claims against Berning.

{¶ 5} The Archdiocese and Berning filed motions to dismiss the causes of action based, in part, on their contention that the claims were barred by the applicable statutes of limitations. The trial court granted the motions and dismissed the claims in their entirety.

{¶ 6} These appeals followed. The Schultes are the appellants in the appeal numbered C–030827. Cramer, Dorn, Wanninger, Ferry, and Vonderheide are the appellants in the appeal numbered C–040061. We have consolidated the cases for purposes of argument and decision.

{¶ 7} The appellants now claim, in a single assignment of error, that the trial court erred in granting the motions to dismiss pursuant to Civ.R. 12(B)(6). We first address the contention that the trial court erred in holding that the claims against the Archdiocese were barred by the applicable statutes of limitations.

{¶ 8} Because statute-of-limitations issues generally involve mixed questions of law and fact, Civ.R. 12(B)(6) is usually not the appropriate vehicle for challenging a complaint on that ground.[1] Still, a motion to dismiss based upon the bar by the statute of limitations may be granted where the complaint shows

---

1. *Tri–State Computer Exchange, Inc. v. Burt,* 1st Dist. No. C–020345, 2003-Ohio-3197, at ¶ 12.

conclusively on its face that the action is time-barred.[2]  This court reviews de novo a dismissal under Civ.R. 12(B)(6).[3]

{¶ 9} The Supreme Court of Ohio thoroughly discussed the statutes of limitations that are applicable to sexual-abuse claims in the leading case of *Doe v. First United Methodist Church*.[4]  Regardless of how the cause of action is framed, a claim premised upon acts of sexual abuse is subject to the one-year statute of limitations for assault and battery pursuant to R.C. 2305.111.[5]  A claim in which the plaintiff seeks to hold a school or church vicariously liable for the acts of an employee is subject to the same one-year limitation period.[6]  A claim that is asserted directly against a church for failing to protect a person from an employee's sexual misconduct is governed by the two-year statute of limitations set forth in R.C. 2305.10.[7]  The applicable statutes of limitations are not triggered until the person claiming injury reaches the age of majority.[8]

{¶ 10} In the case at bar, it is evident from the allegations in the complaints that well over two years had elapsed since the appellants who had been assaulted had reached the age of majority.  The appellants do not argue that they had repressed their memory of the abuse or were otherwise unable to assert their claims due to any psychological condition, as discussed in *Ault v. Jasko*.[9]  Thus, it would appear a foregone conclusion that the appellants filed their complaints against the Archdiocese long past the expiration of the two-year statute of limitations.  Nonetheless, the appellants cite the discovery rule discussed in *Doe* for the proposition that the claims against the Archdiocese were not subject to dismissal.

{¶ 11} In *Doe*, the court discussed the possibility that the limitations period for claims brought directly against a church or a school could be affected by the plaintiff's lack of knowledge about the culpability of the church or school.  The court stated that "the facts and events which triggered the statute of limitations

---

2.  Id. See, also, *Velotta v. Leo Petronzio Landscaping, Inc.* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346, 433 N.E.2d 147, paragraph three of the syllabus.

3.  *Tri–State Computer*, supra, at ¶ 11.

4.  68 Ohio St.3d 531, 629 N.E.2d 402.

5.  Id., paragraph one of the syllabus.

6.  Id. at 537, 629 N.E.2d 402.

7.  Id.

8.  R.C. 2305.16; *Doe*, supra, 68 Ohio St.3d at 537, 629 N.E.2d 402.

9.  (1994), 70 Ohio St.3d 114, 637 N.E.2d 870.

on appellant's claims for sexual abuse did not necessarily trigger the R.C. 2305.10 two-year period of limitations on appellant's independent negligence claims against the church and the school district * * *. However, appellant has never claimed or argued that his knowledge of the sexual abuse was insufficient to apprise him of the possibility that the church or the school district had been negligent in failing to protect him from [the abusive employee]." [10] The court therefore assumed that the triggering event for the church was the same as the triggering event for the individual defendant. [11]

{¶ 12} Although the discussion in *Doe* with respect to the plaintiff's discovery of the employer's culpability was obiter dicta, the appellants claim that it has also been adopted in the holdings of Ohio's courts. The appellants first cite *Browning v. Burt.* [12]

{¶ 13} In *Browning,* the Supreme Court of Ohio held that the triggering event for malpractice claims against a hospital was not necessarily the same as that for a surgeon. The plaintiffs had alleged that they were not aware of the hospital's negligence in issuing credentials to a physician until they had seen a television program detailing the abnormalities caused by the physician's surgical practices. [13] In holding that the television program was the triggering event for the running of the limitations period for the hospital, the court emphasized that "the discovery rule (concept) must be specially tailored to the particular context in which it is to be applied." [14]

{¶ 14} We agree with the Archdiocese that *Browning* is distinguishable from the case at bar. Whereas *Browning* involved the somewhat complex issue of whether a licensed physician should have been permitted to perform a certain type of surgical procedure, the question of whether a priest had committed an impropriety in sexually abusing children involved no such complexity so that the plaintiffs would need a separate triggering event to apprise them that misconduct had occurred or that the church, as the priest's employer, may have been negligent in allowing the abuse to occur.

{¶ 15} The appellants also cite two common pleas cases dealing with sexual abuse in support of their proposition that we should apply the discovery rule

---

10. *Doe,* supra, 68 Ohio St.3d at 539, 629 N.E.2d 402.

11. Id.

12. (1993), 66 Ohio St.3d 544, 613 N.E.2d 993.

13. Id. at 560–561, 613 N.E.2d 993.

14. Id. at 559, 613 N.E.2d 993.

discussed in *Doe*. In *Doe v. Lieberth*,[15] the Cuyahoga County Court of Common Pleas applied the rule in overruling a motion to dismiss, but in doing so, it relied heavily on *Browning*, a reliance we have already found to be misplaced. And although the Montgomery County Court of Common Pleas has also applied the discovery rule to a church in the context of a sexual-abuse case,[16] we have found no authority in the form of an Ohio Supreme Court holding that would compel such a result.

{¶ 16} Moreover, even were we to accept the appellants' contention that *Doe* requires an inquiry into the plaintiff's knowledge concerning the church's own wrongdoing before the limitations period may begin to run, we would find no error in the dismissal of the claims in the case at bar. Under *Doe*, the relevant inquiry is whether the plaintiff's knowledge of the sexual abuse was sufficient to apprise him of the *possibility* that the church had been negligent.[17] In the case at bar, it was undisputed that the appellants were aware that the Archdiocese had employed Berning and that the repeated assaults had all occurred on church property. These facts alone were sufficient to put the appellants on notice that there was a possibility that the Archdiocese had been negligent.

{¶ 17} In arguing that their knowledge was insufficient in this regard, the appellants allege that the Catholic Church had pursued a policy of secrecy and that the Archdiocese had later resisted efforts by the Hamilton County Prosecutor's office and other entities to investigate allegations of abuse. We find these allegations unavailing. Given the appellants' knowledge of the circumstances of the abuse, we hold that they had at the very least a duty to investigate the possibility that the Archdiocese was negligent or otherwise culpable. Their failure to assert their claims against the Archdiocese until after the expiration of the statute of limitations was fatal to those claims.

{¶ 18} In a related argument, the appellants contend that the trial court erred in rejecting the proposition that the Archdiocese's alleged fraudulent concealment of information relevant to the causes of actions tolled the statutes of limitations. In support of their argument, the appellants cite a Kentucky case, *Roman Catholic Diocese of Covington v. Secter*.[18] In *Secter*, the Kentucky Court of Appeals held that evidence of the church's concealment of facts relevant to its knowledge of a priest's proclivity to commit sexual abuse was sufficient to raise a

---

**15.** (May 30, 2003), Cuyahoga C.P. No. 03497920.

**16.** See *Schoner v. Soc. of the Precious Blood* (Jan. 24, 2003), Montgomery C.P. No. 01–CV–1299.

**17.** See *Doe*, supra, 68 Ohio St.3d at 539, 629 N.E.2d 402.

**18.** (Ky.App.1998), 966 S.W.2d 286.

jury question of whether to toll the statute of limitations as it applied to the church.[19] The court thus permitted the claim to proceed despite the acknowledgement that the plaintiff had been aware of the injury as well as the surrounding circumstances of the injury at the time he had reached the age of majority.[20]

{¶ 19} We are not persuaded by the reasoning in *Secter.* Contrary to the Ohio Supreme Court's statement in *Doe,* the Kentucky court apparently held that there was no requirement that the plaintiff investigate a claim against a church even when he was aware of the injury and the circumstances surrounding the injury. In *Secter,* the fact of the concealment itself was sufficient to toll the statute of limitations.[21] That a holding cannot be reconciled with the *Doe* court's pronouncement that the limitations period begins to run when the plaintiff's knowledge is sufficient "to apprise him of the possibility that the church or the school district had been negligent." [22]

{¶ 20} In the case at bar, there is no allegation that the Archdiocese concealed the fact of the alleged injuries, only its role in those injuries. As we have already held, the appellants' knowledge of the facts surrounding the injuries was sufficient to apprise them of the possibility that the Archdiocese had been negligent. We therefore decline to follow *Secter.* Also, because the appellants did not allege that they had detrimentally relied on false or fraudulent affirmative statements made by the Archdiocese, the doctrine of equitable estoppel could not have been applied to toll the limitations period.[23]

■ {¶ 21} The appellants further contend that the trial court erred in not permitting discovery so that they could investigate the Archdiocese's attempts to squelch the truth about priest misconduct. Having held that the appellants possessed, when they reached the age of majority, all the information they needed to make an inquiry into the possible wrongdoing of the Archdiocese, we find no prejudice in the court's refusal to permit discovery concerning its concealment of abuse cases.

■ {¶ 22} The appellants also argue that certain causes of action did not even accrue until well after they had reached the age of majority. For example,

---

19. Id. at 290.

20. Id. at 289

21. Id. at 290.

22. *Doe,* supra, 68 Ohio St.3d at 539, 629 N.E.2d 402.

23. See *Livingston v. Diocese of Cleveland* (1998), 126 Ohio App.3d 299, 315, 710 N.E.2d 330.

they suggest that the Archdiocese had "ratified" Berning's misconduct through its subsequent efforts to protect him from investigation or legal action. Similarly, they claim that the Archdiocese could be held liable for intentional or negligent infliction of emotional distress through its attempts to hide the abuse. In rejecting this argument, we are guided by the *Doe* court's admonition that the manner in which the plaintiff characterizes the cause of action is not controlling.[24] The injuries in the case at bar were caused by the sexual abuse inflicted by Berning, and the appellants' attempts to resuscitate the claims by alleging later manifestations of the injuries are not well taken.

{¶ 23} Next, the Schultes contend that the trial court erred in dismissing their causes of action for breach of fiduciary duty and negligent misrepresentation because the Archdiocese did not move for dismissal of those claims. We find no merit in this argument. First, our review of the motions and accompanying memoranda reveals that the Archdiocese moved for the dismissal of all claims. Second, the fact that we review the dismissal of the claims de novo renders any error on the part of the trial court harmless.

{¶ 24} The only remaining issue that we must address concerning the claims against the Archdiocese is Barbara Schulte's loss-of-consortium cause of action. As the trial court correctly held, a claim for loss of consortium arises out of marriage and does not extend to unmarried individuals. A person is not entitled to bring a claim for loss of consortium based upon events that occurred before marriage.[25] Here, the alleged injury to Harry Schulte occurred many years before he married Barbara Schulte. And while the Schultes argue that the emotional harm did not fully manifest itself until years after the abuse, we have rejected that claim in the context of the statute-of-limitations argument. We also reject it as it relates to the loss-of-consortium claim.[26]

{¶ 25} For the foregoing reasons, we hold that all the claims asserted against the Archdiocese were correctly dismissed. The appellants' assignment of error with respect to the claims against the Archdiocese is overruled.

{¶ 26} We now turn to the issue of Michael Vonderheide's claims against Berning. Vonderheide asserts that the trial court erred in dismissing those claims, contending that he did not reach the age of majority until after Berning had left Ohio and that, therefore, the statute of limitations should have been

---

24. See *Doe*, supra, 68 Ohio St.3d at 536, 629 N.E.2d 402.

25. See, e.g., *Hite v. Brown* (1995), 100 Ohio App.3d 606, 617, 654 N.E.2d 452.

26. See id.

tolled pursuant to R.C. 2305.16. But Vonderheide does not argue that his claims against the Archdiocese should also have been tolled.

{¶ 27} R.C. 2305.15 provides, "When a cause of action accrues against a person, if the person is out of the state, has absconded, or conceals self, the period of limitation for the commencement of the action * * * does not begin to run until the person comes into the state or while the person is so absconded or concealed." The Supreme Court of Ohio has applied the phrase "out of the state" literally and has not required, as a prerequisite to its application, a showing that the defendant has left the state to evade suit or for other wrongful reasons.[27] Accepting, as we must, Vonderheide's allegations that Berning left Ohio in 1970 and never returned, we hold that the trial court erred in failing to apply the tolling statute. To that extent only, we sustain the assignment of error in the appeal numbered C–0400061.

{¶ 28} In sum, the judgment in the appeal numbered C–0300827 is affirmed in its entirety. The judgment in the appeal numbered C–040061 is affirmed in part and reversed in part, and that cause is remanded to the trial court for further proceedings consistent with this opinion and the law.

<div align="right">Judgment accordingly.</div>

GORMAN and PAINTER, JJ., concur separately.

GORMAN, Judge, concurring separately.

{¶ 29} I concur with Judge Hildebrandt's resolution of each assignment of error. I write separately only to stress the conceptual distinction between use of the discovery rule and the equitable doctrine of fraudulent concealment, as well as to highlight a constitutional issue not raised by either party but that I believe is worthy of discussion in a later case.

{¶ 30} As the majority correctly points out, the Ohio Supreme Court has restricted application of the discovery rule in sexual abuse cases to those in which the victim suffers repressed memory and recalls the abuse only at a later time. *Ault v. Jasko* (1994), 70 Ohio St.3d 114, 637 N.E.2d 870. The appellants concede that they do not suffer and never have suffered from repressed memory. Absent allegations of repressed memory, the events that trigger the one-year statute of limitations for assault and battery also trigger the two-year statute of limitations for negligence claims against the tortfeasor's employer, at least when the victim should know about the possibility of such a claim. *Doe v. First United Methodist Church* (1994), 68 Ohio St.3d 531, 539, 629 N.E.2d 402. The case of *Roman*

---

27. See, generally, *Johnson v. Rhodes* (2000), 89 Ohio St.3d 540, 733 N.E.2d 1132.

*Catholic Diocese of Covington v. Secter* (Ky.App.1998), 966 S.W.2d 286, relied on by the appellants, reached the same conclusion.

{¶ 31} The doctrine of fraudulent concealment, on the other hand, shifts the focus away from the conduct of the plaintiff and onto that of the defendant. The doctrine would hold that the Archdiocese should be estopped to rely on the statute of limitations if it either engaged in active deception or violated a duty of disclosure, concealing material facts that prevented the discovery of the negligence claim against it. See *Secter,* supra, 966 S.W.2d at 290; *Cole v. Shults–Lewis Child & Family Services, Inc.* (Ind.App.1997), 677 N.E.2d 1069, 1074. Ohio courts that have considered the issue have held that the defendant must make a factual misrepresentation for the doctrine to apply. *Livingston v. Diocese of Cleveland* (1998), 126 Ohio App.3d 299, 314, 710 N.E.2d 330; *A.S. v. Fairfield School Dist.,* 12th Dist. No. CA 2003–04–088, 2003-Ohio-6260, 2003 WL 22764383, ¶ 8. I disagree with such a strict application of the doctrine and would follow the rule as it is stated in *Secter,* requiring only a showing of concealment of facts or information that obstructs the victim from investigating or filing suit.

{¶ 32} Because it is equitable in nature, however, I believe that the doctrine of fraudulent concealment, while focusing on the conduct of the defendant, must also consider the actions, or lack thereof, of the plaintiff. One principle of equity is that those who do not seek to enforce a right at the proper time risk the forfeiture of that right. Although it is understandable why underage victims of sexual abuse by the clergy are reluctant to come forward into the legal arena to challenge the hierarchy of their church, it is also reasonable to require evidence that they would have done so after reaching the age of majority and within the two-year statute of limitations *but for* their reliance upon the church's conduct, misrepresentation, or silence. In sum, I do not believe that the statute of limitations should be avoided under the doctrine of fraudulent concealment absent affirmative evidence of detrimental reliance, as otherwise the doctrine becomes little more than an improper makeshift version of the discovery rule.

{¶ 33} Finally, I agree with the majority that we have no option but to revive Vonderheide's claim against Father Berning pursuant to R.C. 2305.15. But I question the application of this statute in light of the availability of valid service by certified mail for nonresidents who commit torts in Ohio. See Civ.R. 4.3(A)(3) and (A)(9). An argument can certainly be made that the tolling of the statute of limitations for nonresidents of Ohio violates the Commerce Clause, as it penalizes people who move out of state by imposing a longer statute of limitations on them than on those who remain in the state. A similar argument was successful in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.* (1988), 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896, as discussed in *Johnson v. Rhodes* (2000), 89 Ohio St.3d 540, 733 N.E.2d 1132, which recognized the chilling effect of a statute of

limitations that is perpetually tolled for nonresident corporations without a statutory agent in Ohio. In my view, in an appropriate case where this issue is raised and properly briefed, we must address whether the same reasoning applies to nonresident individuals.

PAINTER, J., concurs in the foregoing concurring opinion.