Francis MEEHAN, Appellant,

v.

ARCHDIOCESE OF PHILADELPHIA and Cardinal Anthony Bevilacqua, Appellees.

John Patrick McDonnell, Alex Joseph McDonnell and Brian Francis McDonnell, Appellants,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Joseph Crothers, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Charles E. Dietz, Jr., Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

P.M.B., Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Joseph Nowacky, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Kevin M. Nolan, Sr., Appellant,

v.

---

**26.** As we conclude that the plain language of the statutes at issue do not give the Fiscal Office the authority to assess EGSs as public utilities, we need not reach PPL's and Conectiv's argument that the Fiscal Office's interpretation of section 2809(e) unconstitutionally grants it unfettered authority. *See Wertz v. Chapman Twp.*, 559 Pa. 630, 741 A.2d 1272, 1273 (1999) (courts should avoid constitutional issues when the issue at hand may be decided upon other grounds).

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Paul Coleman, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

C.J.M., Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Anthony B. Downing, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Stephen Walsh, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

John Doe 3, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

D.P.A., Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

John J. McNeila, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

C.T.G., Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

James P. Dolan, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Christopher D. Nolan, Appellant,

v.

Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua, Appellees.

Rocco J. Parisi, Jr., Appellant,

v.

Archdiocese of Philadelphia, His Eminence Anthony Cardinal Bevilacqua, the Estate of his Eminence John Cardinal Krol, St. Monica Roman Catholic Church and Rev. Joseph P. Gallagher, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 16, 2005.

Filed March 14, 2005.

914

Richard M. Serbin, Altoona and Jay N. Abramowitch, Wyomissing, for Meehan, John Patrick McDonnell, Alex Joseph McDonnell, Brian Francis McDonnell, Crothers, Deitz, P.M.B., Nowacky, Kevin Nolan, Coleman, C.J.M., Downing, Walsh, Doe, McNeila, C.T.G., Dolan, Christopher Nolan, appellants.

Joseph J. McIntosh, Media, for D.P.A., appellant.

Stewart J. Eisenberg, Philadelphia, for Parisi, appellant.

John J. Duffy, West Chester, for Gallagher.

C. Clark Hodgson, Jr., for appellees.

BEFORE: GANTMAN, PANELLA, and OLSZEWSKI, JJ.

OPINION BY OLSZEWSKI, J.:

¶ 1 Appellants, plaintiffs one through seventeen in this consolidated matter[1] (hereinafter "Group I Plaintiffs") and plaintiff Rocco J. Parisi, Jr.[2] (hereinafter "Group II Plaintiff"), challenge the order of August 13, 2004, granting a motion for judgment on the pleadings in favor of appellees, the defendants in the above referenced cases[3] (hereinafter "Archdiocesan Defendants"). The motion for judgment on the pleadings was granted on the basis of the statute of limitations. Appellants contend that the trial court erred in granting the motion, arguing that the discovery rule and fraudulent concealment exceptions to the statute of limitations are applicable. Appellants claim that jury determinations are necessary with regard to their issues. We affirm.

---

1. These appellants are the first seventeen listed in the caption of this appeal.

2. This appellant is the eighteenth listed in the caption of this appeal.

3. The Group I Plaintiffs filed suit against the Archdiocese of Philadelphia and Cardinal Anthony Bevilacqua; the Group II Plaintiff filed suit against the Archdiocese of Philadelphia, Cardinal Anthony Bevilacqua, the Estate of Cardinal John Krol, St. Monica Roman Catholic Church, and Reverend Joseph P. Gallagher.

¶ 2 The relevant factual history is as follows. Between January and May of 2004, appellants commenced lawsuits against various religious authorities based on alleged sexual abuse committed by Archdiocesan employee priests, and in some cases, a nun. Trial Court Opinion, 8/13/04, at 1–2. The earliest allegation of abuse is based on conduct that occurred in 1957, while the latest allegation of abuse is based on conduct that occurred in 1983. *Id.* at 2. At the time of the alleged abuse, appellants ranged in age from ten to eighteen; and at the time of the filing of their complaints, appellants ranged in age from thirty-four to sixty-one.[4] *Id.*

¶ 3 Group I Plaintiffs, who did not file suit against their abusers, brought suit against the Archdiocese of Philadelphia and Cardinal Bevilacqua, raising claims of negligence, negligence per se and failure to warn, negligent supervision and failure to supervise, and fraudulent concealment and failure to provide a secure environment. Group I Plaintiffs' Complaints. The Group II Plaintiff brought suit against the Archdiocese of Philadelphia, Cardinal Bevilacqua, the Estate of Cardinal Krol, St. Monica Roman Catholic Church, and his alleged abuser, Father Gallagher, raising claims of battery, intentional infliction of emotional distress, negligent infliction of emotional distress, fraudulent concealment, negligence, negligence per se, and respondeat superior. Group II Plaintiff's Complaint. The Archdiocesan Defen-

dants, after filing answers with new matter (which raised the statute of limitations as an affirmative defense), moved for judgment on the pleadings based on the statute of limitations. Trial Court Opinion, 8/13/04, at 2. This motion was granted by the trial court on August 13, 2004, and these appeals follow.[5]

¶ 4 Our scope of review on an appeal from the grant of judgment on the pleadings "is plenary ... we must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Citicorp North America, Inc. v. Thornton,* 707 A.2d 536, 538 (Pa.Super.1998). Entry of judgment on the pleadings is permitted under Pa.R.C.P. 1034, "which provides for such judgment after the pleadings are closed, but within such time as not to delay trial ... it may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Id.* Additionally, the standard to be applied on review "accepts all well-pleaded allegations of the complaint as true." *Tucker v. Philadelphia Daily News,* 577 Pa. 598, 848 A.2d 113, 131 (2004).

¶ 5 The Group I Plaintiffs claim that the trial court erred by entering judgment on the pleadings based on the statute of limitations where the discovery rule, fraudulent concealment, and new harm excep-

4. In 1984 the General Assembly enacted a minority tolling provision which tolls the running of the statute of limitations for minors until the age of majority. 42 Pa.C.S. § 5533(b). This provision is not implicated here, however, as the statute is not retroactive (the current causes of action all accrued prior to the enactment of the statute) and because all of the plaintiffs here brought suit beyond even the extended period of time under the minority tolling statute.

5. We note that the trial court properly dismissed Group I Plaintiffs' negligence per se/failure to warn claims, as all abuse alleged here occurred between 1957 and 1983 and the Child Protective Services Law did not require members of the clergy to report child abuse until the July 1, 1995 amendments. *See* 23 Pa.C.S.A. § 6311. The trial court also properly dismissed the failure to supervise claims, as Pennsylvania does not recognize such causes of action. *See Hutchison v. Luddy,* 763 A.2d 826 (Pa.Super.2000).

tions and analyses were applicable so as to warrant a jury determination. The Group I Plaintiffs state that the Archdiocese of Philadelphia and Cardinal Bevilacqua engaged in fraudulent conduct with regard to offending priests and nuns by providing known child abusers with unrestricted access to minors, providing child abusers with unrestricted use of church properties, announcing false reasons for re-assignments of child abusers, promoting child abusers within the church hierarchy, falsely listing child abusers' status in official directories, transferring child abusers without notifying parishioners of their history, and allowing child abusers to honorably retire. The Group I Plaintiffs claim that they did not discover this pattern of conduct until 2002 when the Archdiocese of Philadelphia acknowledged allegations of sexual abuse against some of its priests, and the president of the United States Conference of Catholic Bishops published statements regarding the Catholic Church's response to the victims of clergy misconduct.[6] The Group I Plaintiffs claim that they could not have discovered the Archdiocese's or Cardinal Bevilacqua's roles in these matters until 2002 due to the concealment by the defendants. The Group I Plaintiffs contend that a jury should determine whether these plaintiffs exercised reasonable diligence in pursuing their causes of action. Group I Plaintiffs' Brief.

¶ 6 In support of their claims, the Group I Plaintiffs cite four decisions of the Court of Common Pleas[7] in which the lower courts denied preliminary objections or motions for judgment on the pleadings based on the statute of limitations. These courts found that there were fact questions for the jury to determine whether the plaintiffs knew or should have known that they were injured or that the Archdiocese could have been responsible for their injuries. The Group I Plaintiffs claim that similarly, the jury must resolve the issues here. Group I Plaintiffs' Brief.

¶ 7 The Group I Plaintiffs emphasize that their claims against the Archdiocese of Philadelphia and Cardinal Bevilacqua are independent causes of action from any claims against their abusers. With regard to the statute of limitations, the Group I Plaintiffs' discovery rule exception claim is that they did not know they were injured by the Archdiocese of Philadelphia and Cardinal Bevilacqua at the time of the abuse and that because of the defendants' conduct, they could not have known the Archdiocese or Cardinal Bevilacqua injured them or caused their injury at the time of the abuse. The Group I Plaintiffs' fraudulent concealment claim is that because of the nature of their relationship to the Archdiocese and its personnel, and due to the systematic pattern of conduct exhibited by the Archdiocese, the statute of limitations should be tolled since the plaintiffs relaxed their vigilance in bringing suit, and the Archdiocese's conduct prevented them from discovering their injury or its cause within the prescribed period of time. Additionally, the plaintiffs claim

---

**6.** The president of the United States Conference of Catholic Bishops stated "we are the ones, whether through ignorance or lack of vigilance, or—God forbid—with knowledge, who allowed priest abusers to remain in ministry and reassign them to communities where they continue to abuse."

**7.** *A.L.M. v. Diocese of Allentown*, No.2004–C–78, 68 Pa. D. & C.4th 111 (Lehigh County, 2004); *Bonson v. Diocese of Altoona–Johnstown*, No. 3104 of 2003, 2004 WL 1681126 (C.P.Westmoreland, 2004); *Matthews v. Diocese of Pittsburgh*, No. GD04–002366, 67 Pa. D. & C.4th 393 (Allegheny County, 2004); and *Morrison v. Diocese of Altoona–Johnstown*, No. 1236 of 2004, 68 Pa. D. & C.4th 473 (C.P.Westmoreland, 2004).

that, beginning in 2002, the coverage of the Catholic Church abuse scandal constituted new harm that should likewise toll the statute of limitations. We are constrained to disagree.

¶ 8 Under Pennsylvania law, tort claims for intentional conduct, negligence, and conduct based in fraud are subject to a two-year statute of limitations. 42 Pa. C.S.A. § 5524 states, in pertinent part, "the following actions and proceedings must be commenced within two years: an action for assault, battery, false imprisonment . . . an action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another . . . [and] any other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud." 42 Pa.C.S.A. § 5524(1), (2), (7).

¶ 9 The statute begins to run "as soon as the right to institute and maintain a suit arises; lack of knowledge, mistake or misunderstanding do not toll the running of the statute of limitations." *Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983). A person asserting a claim "is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period." *Id.*

¶ 10 The statute of limitations requires "aggrieved individuals to bring their claims within a certain time of the injury, so that the passage of time does not damage the defendant's ability to adequately defend against claims made . . . the statute of limitations supplies the place of evidence lost or impaired by lapse of time, by raising a presumption which renders proof unnecessary." *Dalrymple v. Brown*, 549 Pa. 217, 701 A.2d 164, 167 (1997). Statutes of limitations "are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience." *Kingston Coal Company v. Felton Min. Co., Inc.*, 456 Pa.Super. 270, 690 A.2d 284, 288 (1997).

¶ 11 Here, forty-seven years have passed since the earliest instance of alleged abuse, and twenty-one years have passed since the latest instance of alleged abuse. It is clear that unless an exception is applicable, the Group I Plaintiffs' claims are barred by the statute of limitations.

¶ 12 The Group I Plaintiffs first claim that the discovery rule tolls the statute of limitations. The discovery rule is an exception to the requirement that a complaining party must file suit within the statutory period. The discovery rule provides that "where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Id.* The statute begins to run in such instances when the injured party "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Haggart v. Cho*, 703 A.2d 522, 526 (Pa.Super.1997). The party seeking to invoke the discovery rule "bears the burden of establishing the inability to know that he or she has been injured by the act of another despite the exercise of reasonable diligence." *Cochran v. GAF Corp.*, 542 Pa. 210, 666 A.2d 245, 249 (1995).

¶ 13 In the past, we have applied the discovery rule in such matters as medical malpractice cases, where the plaintiff's injury, itself, is not obvious or apparent (*See Ayers v. Morgan*, 397 Pa. 282, 154 A.2d 788 (1959)) and in "creeping disease" cases, where the plaintiff had been exposed to hazardous substances but the injury did not develop until a later time (*See Trieschock v. Owens Corning Fiberglas Co.*, 354 Pa.Super. 263, 511 A.2d 863 (1986)).

■ ¶ 14 Here, the Group I Plaintiffs state that they knew they were injured by their abusers at the time of the abuse, that they knew the identity of their abusers, that they knew their abusers were employed by the Catholic Church, and that they knew their abusers were part of the hierarchy of the Catholic Church. These plaintiffs claim, however, that they did not know that the Church was a possible cause of their injury until 2002. The plaintiffs desire the jury to determine whether the plaintiffs exercised reasonable diligence in investigating their injury and its cause for purposes of bringing suit against the Archdiocese of Philadelphia and Cardinal Bevilacqua.

¶ 15 The Archdiocese of Philadelphia and Cardinal Bevilacqua respond by noting that plaintiffs knew they were abused and knew the identity of their abusers, but they failed to inquire, at all, into possible causes of action against their abuser or their abuser's employer. To additionally support their position, the Archdiocese and Cardinal Bevilacqua cite cases from Pennsylvania (in which the lower courts granted preliminary objections or motions for judg-

ment on the pleadings based on the statute of limitations, finding no fact questions for the jury regarding when the plaintiffs knew or should have known that they were injured or that the Archdiocese could have been responsible for their injuries) and from other jurisdictions (holding that notice of a claim against a priest or other religious official constitutes notice of a potential claim against the religious organization that employs them).[8]

¶ 16 We agree with the Archdiocese that the discovery rule is not applicable here. The child abuse is the injury in this matter, not the alleged cover-up by the Archdiocese (otherwise, any member of the Catholic Church could conceivably bring suit against the Archdiocese, absent any abuse, alleging injury from the Archdiocese's general conduct). Unlike traditional discovery rule cases where the injury, itself, is not known or cannot be reasonably ascertained, the plaintiffs' injuries, here, were known when the abuse occurred.

¶ 17 The Group I Plaintiffs are really claiming that they were unaware, not of their injury, but of a secondary cause of their injury (the primary cause being the individual who committed the abuse). The plaintiffs claim that a jury should determine if the plaintiffs should have investigated these secondary parties during the limitations period or if the plaintiffs were unable, despite reasonable diligence, to bring suit against these secondary parties until 2002.

■ ¶ 18 Before applying the discovery rule exception, we must "address the ability of the damaged party, exercising reasonable diligence, to ascertain the fact

8. *S.A.G. v. Diocese of Allentown*, No. S–53–2004 (Schuylkill County, 2005); *Catizone v. Diocese of Allentown*, No. S–448–2004 (Schuylkill County, 2005); *Doe v. Archdiocese of Washington*, 114 Md.App. 169, 689 A.2d 634 (1997); *Mark K v. Roman Catholic Archbishop of Los Angeles*, 67 Cal.App.4th 603, 79 Cal.Rptr.2d 73 (1998); *Cramer v. Archdiocese of Cincinnati*, 158 Ohio App.3d 110, 814 N.E.2d 97 (2004); *Doe v. Catholic Diocese of Cleveland*, 158 Ohio App.3d 49, 813 N.E.2d 977 (2004).

of a cause of action ... the [plaintiffs'] conduct is to be evaluated in terms of what [they] should have known at a particular time by following a course of reasonable diligence." *Haines v. Jones,* 830 A.2d 579, 585 (Pa.Super.2003). Generally, "the point at which the complaining party should reasonably be aware that he has suffered an injury is ... an issue of fact to be determined by the jury." *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 622 A.2d 1388, 1391 (1993). Where "the facts are so clear that reasonable minds cannot differ," however, the commencement of the limitations period can be determined as a matter of law. *Id.* Additionally, "if a party has the means of discovery within [his] power but neglects to use them, [his] claim will still be barred." *Haines,* 830 A.2d at 585.

¶ 19 Here, the plaintiffs knew they were injured, knew the identity of the primary cause of their injury, knew their abusers were employees of the Archdiocese of Philadelphia, and knew the abuses took place on church property, yet the plaintiffs conducted no investigation into any cause of action against their abusers or into any other aspect of the matter. It is undisputed that the plaintiffs were aware that the Archdiocese employed their abusers and that the abuses all occurred on church property. These facts alone were sufficient to put the plaintiffs on notice that there was a possibility that the Archdiocese had been negligent. Neither the plaintiffs' lack of knowledge of the Archdiocese's conduct, nor the plaintiffs' reluctance, as members of the Catholic Church, to investigate the possible negligence of the Archdiocese of Philadelphia after having been abused by one of its priests or nuns, tolls the statute of limitations when the plaintiffs had the means of discovery but neglected to use them. Therefore we

determine, as a matter of law, that the discovery rule is inapplicable and does not toll the statute of limitations in this matter.

¶ 20 The Group I Plaintiffs next claim that the fraudulent concealment doctrine tolls the statute of limitations. The doctrine of fraudulent concealment is an exception to the requirement that a complaining party must file suit within the statutory period. Where, "through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Kingston Coal Company,* 690 A.2d at 290 (citing *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792, 794 (1987)). The defendant's conduct "need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient ... mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Id.* Moreover, "in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." *Id.*

¶ 21 Here, the Group I Plaintiffs claim that due to their relationship with the Archdiocese of Philadelphia (which they argue equates to a fiduciary relationship) and because of the general and systematic conduct exhibited by the Archdiocese with regard to its offending priests and nuns (as articulated above), the plaintiffs relaxed their vigilance and deviated from their right of inquiry.[9] The plaintiffs con-

---

9. Plaintiffs have argued that their general relationship to the Archdiocese amounts to the

tend that the general and systematic conduct of the Archdiocese of Philadelphia constitutes an affirmative act under the doctrine of fraudulent concealment, which therefore requires a jury determination and the tolling of the statute of limitations.

¶ 22 The Archdiocese of Philadelphia and Cardinal Bevilacqua respond by noting that the plaintiffs failed to identify any affirmative or independent act of concealment, and Instead, only made accusations of systematic misconduct with regard to other priests, other parishioners, and the public in general. The Archdiocesan defendants claim that even if this non-specific conduct is considered concealment, the plaintiffs cannot be considered to have relied on any representations or omissions of the Archdiocese because the plaintiffs did not make any effort to investigate their claims and the Archdiocese did not prevent them from investigating their claims.

¶ 23 We agree with the Archdiocese that the doctrine of fraudulent concealment does not toll the statute of limitations here. The plaintiffs have not put forth any evidence to indicate that they made any inquiries to the Archdiocese prior to 2002 regarding their potential causes of action. The plaintiffs do not allege that the defendants' silence misled them into believing that the alleged sexual abuse did not occur, that it had not been committed by the priests or nun, or that it had not resulted in injury to appellants. The defendants never concealed from any of the plaintiffs the fact of the injury itself. Nor do the plaintiffs allege that they were lied to by the Archdiocese with regard to the identity of their abusers or their abusers' place within the Archdiocese, which if relied

upon, would have caused them to suspend pursuit of their claims.

¶ 24 Again, the essence of the plaintiffs' fraudulent concealment argument is that the defendants' general conduct and/or silence concealed from them an additional theory of liability for the alleged sexual abuse. As noted in the federal case, *Kelly v. Marcantonio*, "this argument misses the mark ... for a cause of action to accrue, the entire theory of the case need not be immediately apparent ... as soon as [the plaintiffs] became aware of the alleged abuse, they should also have been aware that the [defendants], as the priests' employers, were potentially liable for that abuse." *Kelly v. Marcantonio*, 187 F.3d 192, 201 (1st Cir.1999).

¶ 25 Had the plaintiffs (sometime after the abuse but before the running of the statute of limitations) questioned the Archdiocese about their abusers (for example, questions about their abusers' current location or history within the church), and had the Archdiocese affirmatively and independently acted in response to the plaintiffs' inquiries so as to mislead the plaintiffs into forgoing their suits, the fraudulent concealment exception would later allow the plaintiffs' suits. The general and systematic conduct alleged by the plaintiffs here, however, does not constitute an affirmative act for purposes of the fraudulent concealment exception and the plaintiffs have not shown that they relied on any affirmative act of concealment by the defendants which caused them to forgo pursuit of their causes of action. We agree that "to postpone the accrual of causes of action until [the plaintiffs] completed their investigation of all potential liability theories would destroy the effec-

---

specific level of an attorney-client, doctor-patient, or clergy-penitent relationship. While the general relationship between the Archdiocese and its church members may be considered, in some circumstances, overbearing, no specific, legally recognized higher level association, such as the aforementioned relationships, exists in the current matter.

tiveness of the limitations period." *Id.* Therefore the fraudulent concealment exception is inapplicable and does not toll the statute of limitations in this matter.

¶ 26 Finally, the Group I Plaintiffs claim that they suffered new harm and aggravation of old harm as a result of the 2002 through 2004 public disclosures by and about the Archdiocese of Philadelphia. Since the new disclosures were not tortious, however, the trial court properly held that there was no aggravated old harm or independent new harm that could serve to toll the statute of limitations. *See Cathcart v. Keene Industrial Insulation,* 324 Pa.Super. 123, 471 A.2d 493, 507 (1984). Therefore the new harm analysis is inapplicable and does not toll the statute of limitations in this matter.

¶ 27 Finally, the Group II Plaintiff claims that the trial court erred in granting judgment on the pleadings based on the statute of limitations where his repressed memory of his abuse as well as the fraudulent concealment exception serve to toll the statute of limitations. This plaintiff's abuse allegedly occurred between 1973 and 1976; however, plaintiff did not bring suit until 2004, over twenty years after the expiration of the two-year statute of limitations. Plaintiff claims he was unable to specifically recall or remember the sexual abuses until 2002.

¶ 28 The Pennsylvania Supreme Court has addressed contentions that recovery of repressed memories should serve to toll the statute of limitations for the underlying claims. The Court held that "recovery of repressed memories cannot extend statutory limitations." *Dalrymple,* 701 A.2d at 171. Therefore, plaintiff's repressed memory claim is inapplicable in Pennsylvania and does not toll the statute of limitations.

¶ 29 Next, plaintiff claims that because his alleged abuser, Revered Gallagher, disguised illegal and immoral acts as sanctioned by God, the doctrine of fraudulent concealment should toll the limitations period.

¶ 30 We have previously held, however, that "a defendant's general assurances that a situation or condition being experienced by the plaintiff is normal do not rise to the level of fraudulent concealment where the plaintiff's own common sense should inform him that he has been injured." *E.J.M.,* 622 A.2d at 1395. Therefore, the doctrine of fraudulent concealment is inapplicable and does not toll the statute of limitations.

¶ 31 We note separately that for purposes of this appeal, all allegations of the pleadings are deemed true, and as such, the actions alleged by the plaintiffs against the Archdiocese of Philadelphia constitute inexcusable conduct, especially given the teachings and principles for which the Catholic Church truly stands. While we acknowledge that there are many priests, nuns, and religious who are devoutly dedicated to the tenets of the Catholic faith, we must also note that the abuses committed by agents of the Catholic Church are, by far, not isolated events. Nevertheless, we are constrained to agree with the Archdiocese in this matter, that the statute of limitations bars these claims from proceeding, and we decline to create a judicially crafted exception to the statute of limitations solely with regard to the Catholic Church.

¶ 32 Order affirmed.