John DELANEY, Appellant

v.

ARCHDIOCESE OF PHILADELPHIA, Cardinal Justin Rigali and Cardinal Anthony Bevilacqua, Appellees.

Superior Court of Pennsylvania.

Argued Feb. 13, 2007.
Filed May 8, 2007.

Kenneth Millman, Jay N. Abramowitch, Wyomissing, for appellant.

Michael D. O'Mara, Philadelphia, for appellee.

BEFORE: GANTMAN, PANELLA and POPOVICH, JJ.

OPINION BY POPOVICH, J.:

¶ 1 This is an appeal from an order granting judgment in favor of Appellees Archdiocese of Philadelphia, Cardinal Justin Rigali, and Cardinal Anthony Bevilacqua on the basis that the claims of Appellant John Delaney were barred by the statute of limitations. We affirm.

Entry of judgment on the pleadings is permitted under [Pennsylvania Rule of Civil Procedure 1034] which provides for such judgment after the pleadings are closed, but within which such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered where there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

*Kelaco v. Davis & McKean,* 743 A.2d 525, 528 (Pa.Super.1999).

¶ 2 Keeping the preceding standard in mind, the record discloses that in 1982, at the age of eleven, Appellant became acquainted with Father Brzyski while a parishioner at St. Cecilia in Philadelphia, Pennsylvania. Appellant was also being educated in the parish school, worked in the parish rectory, and served as an altar boy for the parish. Father Brzyski routinely sexually abused Appellant at the child's residence and at the parish rectory. These abuses lasted for approximately four years and even continued after Father Brzyski transferred from St. Cecilia in 1983 or 1984—Father Brzyski maintained the relationship with Appellant's family in order to perpetuate the sexual abuse of the minor child, which was all done with the alleged knowledge and concealment of Father Brzyski's pedophilia by Appellees Archdiocese of Philadelphia, Cardinal Justin Rigali, and Cardinal Anthony Bevilacqua.

¶ 3 The reasons Appellant's parents did not know of the abuse were twofold: 1) Father Brzyski ordered Appellant to refrain from telling anyone; and 2) Appellant, his parents, and other parishioners were told by Appellees that Father Brzyski's removal from St. Cecilia was ascribed to "sick leave." This lulled Appellant's parents into allowing Father Brzyski to have continuing access to the minor child. In fact, Appellees' failure to inform Appellant and his family of Father Brzyski's history of sexual abuse of children before and after his removal from St. Cecilia and placement on "sick leave" prompted Appel-

lant and his parents to relax their vigilance and refrain from investigating any potential claims against Appellees until August 6, 2005.

> [Appellant] first learned of the [ ... ] reports [from a former principal of St. Cecilia or another person affiliated with St. Cecilia] regarding Father Brzyski['s abuse of Appellant and/or others at St. Cecilia and it being reported to the Archdiocese and/or its representatives] on or about Sunday, August 6, 2005 when he read about the same in that day's edition of the *Philadelphia Inquirer.*

Complaint, 9/05, ¶ 55; *see also Id.* at ¶ 92 ("Prior to August 6, 2005, [Appellant] did not know, nor did he have any reason to know, that he had a cause of action against [Appellees] for causing tortuous [*sic* ] injury to him due to [Appellees'] concealment of their knowledge of Father Brzyski's and/or other Predator Priests' actions toward other minor parishioners and their vehement and public denials as exemplified by their media statements issued on January 4, 1988, of any truth to the allegations contained in related matters that [Appellees] had a plan and/or policy to ignore complaints made against its offending clerics and to conceal such criminal conduct."); *Id.* at ¶ 101 ("[Appellant] was unaware until at the earliest August 6, 2005, that [Appellees'] continued concealment, misconduct, active fraud, and failure to act on information regarding the misconduct of Father Brzyski and numerous other Archdiocese priests aided, enabled, exacerbated, encouraged, and resulted in causing injuries to [Appellant], thus tolling and/or suspending the running of the statute of limitations against [Appellees] as to all claims.").

¶ 4 Once Appellant discovered Appellees' role in concealing knowledge of sexual abuse by Father Brzyski and other predator priests in the Archdiocese, Appellant filed suit in September of 2005 against Appellees. In answer, Appellees denied Appellant's theories of recovery predicated upon the common law duty of reasonable care (count I), the breach of fiduciary duty (count II), the failure to provide a safe and secure environment (count III), negligent supervision (count IV), persons acting in concert (count V), supplying false information/negligent misrepresentation (count VI), the failure to protect against foreseeable risks (count VII), the duty to warn of unreasonable risk of harm (count VIII), the negligent supervision or use of improper persons as agents (count IX), the use of incompetent persons (count X), fraudulent concealment (count XI), the intentional failure to supervise (count XII), the intentional failure to warn (count XIII), and punitive damages (count XIV).

¶ 5 In new matter, as herein relevant, Appellees asserted that Appellant's claims were barred by the applicable statute of limitations, which in this case would be 42 Pa.C.S.A. § 5524 (a plaintiff must act within a two-year time frame to bring suit for personal injuries sustained at the hands of a defendant). Thereafter, Appellees filed a motion for judgment on the pleadings pursuant to Pa.R.C.P. 1034(a), and a memorandum of law in support thereof, to undermine Appellant's causes of action as violative of the applicable statute of limitations, which was argued not tolled by Appellant's allegations of fraudulent concealment. The trial court agreed and granted Appellees' motion for judgment on the pleadings. A timely appeal followed in which Appellant raises a single claim; to-wit:

> WHERE [APPELLANT'S] COMPLAINT ALLEGES THAT [APPELLEES] MADE FRAUDULENT MISREPRESENTATIONS DIRECTLY TO HIM AND/OR HIS PARENTS VIA

GENERAL ANNOUNCEMENTS TO HIS PARISH AS TO THEIR LACK OF KNOWLEDGE OF ANY HISTORY OF THEIR PRIEST/EMPLOYEE SEXUALLY ABUSING CHILDREN PRIOR TO HIS ABUSE OF [APPELLANT] AND THE PUNITIVE ACTION TO BE TAKEN AGAINST THE PERPETRATOR IN RESPONSE TO [APPELLANT'S] COMPLAINT, CAUSING [APPELLANT] TO RELAX HIS VIGILANCE, WAS IT AN ERROR FOR THE TRIAL COURT TO GRANT [APPELLEES'] MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISS [APPELLANT'S] ESTOPPEL CLAIM UNDER THE FRAUDULENT CONCEALMENT EXCEPTION TO THE STATUTE OF LIMITATIONS?

Appellant's brief, at 5. This issue has been preserved properly for our review.

¶ 6 Appellant alleges that the running of the statute of limitations was tolled based upon Appellees' fraudulent concealment of Father Brzyski's abuse of children.[1] First, the concealment referred to by Appellant is in the nature of a "general, systematic fraudulent conduct on the part of Archdiocesan [Appellees,]" *i.e.*, systematically concealing the danger that predator priests present by misrepresenting them as priests in good standing; creating a misperception in the mind of Appellant and his parents that priests in general and Father Brzyski in particular engaged in isolated incidents of spurious conduct; systematically concealing knowledge of offending clerics' misconduct; and continuing for decades in a covert policy and practice to conceal the problem of sexual abuse of children by parish clergy. *See* Appellant's Complaint, 9/05, ¶¶ 57, 59, 68–79, and 86–93. Second, Appellant points to Appellees' announcement of a false reason for re-assignment of Father Brzyski from St. Cecilia, *i.e.*, "sick leave." *Id.* at ¶¶ 60–61; *see also* Appellant's brief, at 7–11.

¶ 7 The incidents of fraud recited above are the predicate for Appellant's argument that the statute of limitations should be tolled until he learned in August of 2005, from reading the *Philadelphia Inquirer*, of Appellees' concealment and misrepresentation to the public regarding the systematic "cover-up" of its knowledge of the pervasiveness of predator priests within the Archdiocese. These same arguments were raised to no avail by the complainants in *Meehan v. Archdiocese of Philadelphia, et al.*, 870 A.2d 912 (Pa.Super.2005), *allocatur denied*, 584 Pa. 717, 885 A.2d 985 (2005); to-wit:

> [Appellants] claim that the trial court erred by entering judgment on the pleadings based on the statute of limitations where the [ ... ] fraudulent concealment [ ... ] exception[ ] and analyses were applicable so as to warrant a jury determination. [ ... ] [Appellants] state that the Archdiocese of Philadel-

---

1. Appellant alleges in his complaint that he was sexually abused by Father Brzyski beginning when he was eleven years of age (in 1982) and this continued until he was seventeen years old (in 1988). *See* Appellant's Complaint, 9/05, ¶¶ 26–27, 34–35, and 38. These sexual assaults having continued after the 1984 enactment of a minority tolling statute by the Pennsylvania General Assembly (*see* 42 Pa.C.S.A. § 5533), the statute of limitations would be tolled until Appellant reached eighteen years of age, which would have been on October 6, 1989. *Id.* at ¶ 26 ("[Appellant] was born on or about October 6, 1971."). However, because Appellant brought suit in September of 2005, the cause of action is barred by the statute of limitations since it was brought beyond even the extended period of time under the minority tolling statute. *See* 42 Pa.C.S.A. § 5533(b)(2) (tolls the statute of limitations for victims of childhood sexual abuse for twelve years after the age of majority).

phia and Cardinal Bevilacqua engaged in fraudulent conduct with regard to offending priests and nuns by providing known child abusers with unrestricted access to minors, providing child abusers with unrestricted use of church properties, [and] announcing false reasons for re-assignments of child abusers [ . . . ].

\* \* \* \*

[Appellants'] fraudulent concealment claim is that because of the nature of their relationship to the Archdiocese and its personnel, and due to the systematic pattern of conduct exhibited by the Archdiocese, the statute of limitations should be tolled since [Appellants] relaxed their vigilance in bringing suit, and the Archdiocese's conduct prevented them from discovering their injury or its cause within the prescribed period of time.

\* \* \* \*

[ . . . ] The child abuse is the injury in this matter, not the alleged cover-up by the Archdiocese (otherwise, any member of the Catholic Church could conceivably bring suit against the Archdiocese, absent any abuse, alleging injury from the Archdiocese's general conduct).

\* \* \* \*

[ . . . ] [Appellants] contend that the general and systematic conduct of the Archdiocese of Philadelphia constitutes an affirmative act under the doctrine of fraudulent concealment, which therefore requires a jury determination and the tolling of the statute of limitations.

The Archdiocese of Philadelphia and Cardinal Bevilacqua respond by noting that [Appellants] failed to identify any affirmative or independent act of concealment, and instead, only made accusations of systematic misconduct with regard to other priests, other parishioners, and the public in general. The Archdiocese [ . . . ] claim[s] that even if this no-specific conduct is considered concealment, [Appellants] cannot be considered to have relied on any representations or omissions of the Archdiocese because [Appellants] did not make any effort to investigate their claims and the Archdiocese did not prevent them from investigating their claims.

We agree with the Archdiocese that the doctrine of fraudulent concealment does not toll the statute of limitations here.

*Meehan,* 870 A.2d at 917–18, 920, 921.

¶ 8 Herein, consistent with *Meehan,* we find that the doctrine of fraudulent concealment does not toll the statute of limitations. To elucidate, Appellant has not put forth any evidence to indicate that he made any inquiries of Appellees prior to August of 2005 regarding his potential causes of action. Appellant does not allege that Appellees' re-assignment of Father Brzyski from St. Cecilia and listing him on "sick leave" misled Appellant or his parents into believing that the alleged sexual abuse did not occur, that it had not been committed by Father Brzyski, or that the alleged sexual abuse had not resulted in injury to Appellant. Appellees never concealed from Appellant or his parents the fact of the injury itself. Nor does Appellant allege that he or his parents were lied to by Appellees with regard to the identity of his abuser or his abuser's place within the Archdiocese, which if relied upon would have caused him and/or his parents to suspend pursuit of their claims.

¶ 9 The essence of Appellant's fraudulent concealment argument is that Appellees' general conduct and/or listing Father Brzyski on "sick leave" concealed from him

and his parents an additional theory of liability for the alleged sexual abuse from the offending priest to his employers/supervisors/principals/Appellees. As observed in *Meehan,* "this argument misses the mark [ ... ] for a cause of action to accrue, the entire theory of the case need not be immediately apparent [ ... ] as soon as [the plaintiffs] became aware of the alleged abuse, they should also have been aware that the [defendants], as the priests' employers, were potentially liable for that abuse." 870 A.2d at 922 (*quoting Kelly v. Marcantonio,* 187 F.3d 192, 201 (1st Cir.1999)).

¶ 10 With the systematic conduct alleged by Appellant failing to constitute an affirmative act for purposes of the fraudulent concealment exception, and Appellant's failure to show that he relied upon any affirmative act of concealment by Appellees which caused him to forego pursuit of his causes of action, we shall affirm the judgment in favor of Appellees.

¶ 11 Judgment affirmed.