## Ippolito v. Archdiocese of Philadelphia

C.P. of Chester County, No. 2012-03154-TT

*Eugene A. Steger, Jr.*, for plaintiff.

*James J. Rohn, Nicholas M. Centrella* and *Timothy M. Stengel,* for defendants, Archdiocese of Philadelphia and St. Joseph Parish.

*John L. Lachall,* for defendant, Msgr. George J. Mazzota.

TUNNELL, *J.*, Nov. 14, 2014—

ORDER

And now, this 14th day of November, 2014, upon consideration of the motion for summary judgment of defendants, The Archdiocese of Philadelphia and St. Joseph Parish ("the Archdiocese Defendants"), plaintiff's response thereto, and all other matters of record, it is hereby ordered and decreed that the motion is granted.

It is further ordered and decreed that judgment is entered in favor of the Archdiocese Defendants and against plaintiff, and that plaintiff's complaint as to the Archdiocese Defendants is dismissed in its entirety *with prejudice.*[1]

---

1. This action arises out of plaintiff's allegations that her deceased husband, John A. Ippolito ("plaintiff's decedent" or "the decedent"), was sexually abused by an Archdiocese of Philadelphia priest beginning in 1966 and ending in 1971. Presently before the court is defendants', The Archdiocese of Philadelphia and St. Joseph Parish (collectively, "defendants"), motion for summary judgment and plaintiff's response

thereto. For the reasons set forth below, defendants' motion will be granted in its entirety, and plaintiff's complaint will be dismissed, as to these defendants, with prejudice.

The relevant facts and procedural history of this case are as follows: The plaintiff in this action is Michele Ippolito, the wife of the decedent, John A. Ippolito. According to the record before the court, beginning in 1966, when the decedent was 13 years old, and continuing until 1971, when the decedent was 18 years old, the decedent was sexually abused by a Roman Catholic priest, Msgr. George J. Mazzotta, while serving as an altar boy at St. Joseph Parish in Downingtown, Pennsylvania. John Ippolito died on September 9, 2011, and plaintiff was subsequently appointed administratrix of his estate by the Register of Wills of Chester County. Plaintiff ultimately instituted this action by way of writ of summons filed March 28, 2012, on behalf of herself, individually, and as administratrix of the Estate of John A. Ippolito. The writ named The Archdiocese of Philadelphia, St. Joseph Parish, Msgr. George J. Mazzota, and Msgr. William Lynn, as defendants. On January 27, 2014, plaintiff filed a complaint that alleged three causes of action: (1) wrongful death; (2) survival action; and (3) loss of consortium. Defendants filed an answer and new matter to the complaint on March 3rd, which raised the statute of limitations as an affirmative defense. *See,* Pa.R.C.P. No. 1030(a). Defendants' now move for summary judgment, chiefly arguing that the record developed during discovery conclusively establishes that plaintiff's claims are barred by the applicable statutes of limitations. Oral argument was heard on the motion on October 7, 2014. The matter is thus ripe for the court's disposition.

Summary Judgment Standard

Summary judgment is proper only where the pleadings, depositions, answers to interrogatories, admissions of record and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Potter v. Herman,* 762 A.2d 1116, 1117-18 (Pa. Super. 2000); *see also, LJL Transp., Inc. v. Pilot Air Freight Corp.,* 962 A.2d 639, 647 (Pa. 2009) ("The entry of summary judgment is proper whenever no genuine issue of any material fact exists as to a necessary element of the cause of action."). In determining whether to grant a motion for summary judgment, the court examines the record in a light most favorable to the non-moving party, and resolves all doubts as to the existence of a genuine issue of material fact against the moving party. *Ibid.* In opposing the motion, an adverse party "may not rest upon the mere allegations or denials of the pleadings." Pa.R.C.P. No. 1035.3(a). Instead, the non-moving party "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor." *Ertel v. Patriot-News Co.,* 674 A.2d 1038, 1042 (Pa. 1996). "[A] plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law." *Lewis v. Phila. Newspapers, Inc.,* 883 A.2d 185, 190 (Pa. Super. 2003).

A. Plaintiff's Survival Action is Time-Barred

Pennsylvania's survival statute provides that "[a]ll causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa.C.S. § 8302. The survival statute is the vehicle by which a decedent's estate may press a cause of action that a decedent would have had, had he lived. *See, Baumgart v. Keene Bldg. Products Corp.*, 633 A.2d 1189, 1191 (Pa. Super. 1993) *aff'd*, 666 A.2d 238 (Pa. 1995)("If a person is injured by the act of another, a cause of action may accrue to the injured person. His or her death thereafter does not abate the cause of action. [Rather,] the cause of action survives the death of the injured person and continues in the decedent's personal representative."); *see also*, 20 Pa.C.S. § 3373 ("An action or proceeding to enforce any right or liability which survives a decedent may be brought by or against his personal representative alone or with other parties as though the decedent were alive.").

In survival actions, the period of limitations begins to run on the date of injury, as though the decedent were bringing his or her own lawsuit. *Bell v. Willis*, 80 A.3d 476, 480 (Pa. Super. 2013). Where, as here, the decedent's personal representative seeks to recover damages for injury that resulted from the wrongful act or negligence of another, a two-year limitations period applies. *Ibid.*; *see also*, 42 Pa.C.S. § 5524(2), (7). In sexual abuse cases involving claims of tortious conduct, the plaintiff's cause of action accrues-and therefore the period of limitations begins to run-on the date the abuse occurred. *See, e.g.*, *Meehan v. Archdiocese of Philadelphia*, 870 A.2d 912, 919 (Pa. Super. 2005) (Finding that two-year period of limitations began to run at the time alleged sexual abuse occurred); *Dalrymple v. Brown*, 701 A.2d 164, 170 (Pa. 1997) (In sexual abuse case involving a claim of battery, finding that "[i]n a typical battery all the elements of the offensive touching will be present and ascertainable by the plaintiff at the time of the touching itself."); *cf.*, *Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1174 (Pa. Super. 1993) ("In general, the statutory period will begin to run when the cause of action accrues, *i.e.*, the date on which the injury is sustained . . . . An injury is done 'when the act heralding a possible tort inflicts a damage which is physically objective and ascertainable.'") (quoting, *Ayers v. Morgan*, 154 A.2d 788, 792 (Pa. 1959)(internal citation omitted). Here, some 40 years have passed since the latest alleged instance of sexual abuse. Thus, unless plaintiff can establish an exception to the statutory period, her survival claim is time-barred.

i. The Discovery Rule is Inapplicable

Defendants first argue that the discovery rule does not apply to toll plaintiff's survival claim. The "discovery rule" provides that "where the existence of [an] injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is reasonably possible." *Baselice v. Franciscan Friars Assumption BVM Province, Inc.*, 879 A.2d 270, 276 (2005); *see*

*also, Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983) ("The salient point giving rise to the equitable application of the exception of the discovery rule is the inability, despite the exercise of diligence by the plaintiff, to know of the injury."). In such cases, the statute does not begin to run until the injured party "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Baselice*, 879 A.2d at 276 (quoting, *Haggart v. Cho*, 703 A.2d 522, 526 (Pa. Super. 1997)).

In the context of cases alleging past sexual abuse, application of the discovery rule has been pressed in two types of cases. First, those cases in which the plaintiff-victim claims to have been aware of the fact of abuse at or near in time to when it occurred, but who failed to bring an action within the statutory period because he or she failed to recognize that the abuse they experienced gave rise to an injury for which a cause of action could be brought ("Type 1" cases). Second, those cases in which the plaintiff-victim alleges that he or she repressed all memory of the sexual abuse until shortly before suit was filed ("Type 2" cases). *See, Seto v. Willits*, 638 A.2d 258, 260 (Pa. Super. 1994) (Recognizing distinction); *Dalrymple, supra*, 701 A.2d at 169 (same); *see also, E.J.M. v. Archdiocese of Phila.*, 622 A.2d 1388 (Pa. Super. 1993) (Noting that sexual abuse plaintiffs have alleged "that they could not sue within the limitations period either because they had repressed all memory of the abuse and were, therefore, unaware of it[,] or because, despite the fact that they did remember that the abuse had occurred, they nevertheless did not know it had harmed them or was wrongful."). In both types of cases, Pennsylvania courts have uniformly held that application of the discovery rule is unavailable because a plaintiff's (a) failure to appreciate that the acts inflicted upon him or her gave rise to a putative cause of action; or (b) repression of memory of the acts of abuse until sometime after the statutory period has run, are both the result of the mental or psychological "incapacity" of that particular plaintiff to discover the cause of his or her injury. In other words, Pennsylvania law takes an objective approach to application of the discovery rule, and "does not permit the tolling of the statute of limitations on account of the subjective incapacity of the particular plaintiff which allegedly impaired [their] ability to discover the injury or its cause." *Id.* at 1394; *see also,* 42 Pa.C.S. § 5533(a) (Prohibiting tolling of the statute of limitations during a period of "insanity" of the plaintiff); *E.J.M., supra*, 622 A.2d at 1394 (Holding that discovery rule did not apply where plaintiff "knew the abuse was occurring and who was inflicting it", but did not know that the abuse was wrongful or had caused him psychological and emotional harm until after the statutory period had run); *Seto, supra*, 638 A.2d at 261-62 (Holding that discovery rule did not apply where plaintiff allegedly repressed all memory of the sexual abuse because Pennsylvania law does now allow the mental incapacity of a plaintiff to toll the period of limitations); *Meehan, supra*, 870 A.2d at 919-23 (Holding that the discovery rule did not apply to one group of plaintiffs

who were aware of abuse at the time it occurred, and a separate plaintiff that repressed all memory of sexual abuse).

In this case, plaintiff testified at her deposition that she and the decedent met in 1987, married in 1988, and that he never mentioned to her that he had been sexually abused by a priest for the first 20 years of their knowing each other. Plaintiff further testified that, although she did not know if the decedent "forgot" the abuse, the decedent told her that he did not remember the abuse, and that he "*believes...he suppressed the memories and...that it came out during...therapy*" that the decedent received in 2009 and 2010. (Defs.' Ex. D, Dep., 144:3-6; *see also id.*, at 27:11-17 (Testifying that the decedent told her "I didn't remember" the abuse, and that the decedent stated "*through the therapy that he was receiving, it came to a head and he remembered.*")). Thus, plaintiff has put forth evidence that the decedent repressed all memory of the alleged acts of abuse, and that he did not recall the abuse until sometime in 2009 or 2010 while under the care of certain therapist. The law is clear, however, that "recovery of repressed memory cannot extend statutory limitations." *Aquilino v. Philadelphia Catholic Archdiocese*, 884 A.2d 1269, 1275 (Pa. Super. 2005) (quoting, *Dalyrmple, supra*, 701 A.2d at 171). Nor does the fact that plaintiff has alleged that the decedent manifested emotional and psychological injury decades after the abuse occurred change this analysis. "Once the limitations period began to run on the initial injury . . . it also began to run on any related injuries arising from the same wrongful conduct." *Baily v. Lewis*, 763 F. Supp. 802, 810 (E.D. Pa. 1991); *see also, E.J.M., supra*, 622 A.2d at 1394 (adopting the reasoning of *Baily* in Type 1 case); *Seto, supra*, 638 A.2d at 260-61 (adopting the reasoning of *Baily* in Type 2 case); *see also, Cathcart v. Keene Industrial Insulation*, 471 A.2d 493, 507 (Pa. Super. 1984). Accordingly, the court is bound to find that two-year statute of limitations applicable to plaintiff's survival claim is not subject to tolling under the discovery rule.

ii. The Fraudulent Concealment Doctrine Does Not Apply

Defendants next argue that the doctrine of "fraudulent concealment" does not serve to toll the period of limitations applicable to plaintiff's survival claim. The doctrine of fraudulent concealment is an exception to the requirement that a complaining party must file suit within the statutory period. As explained by the court in *Meehan, supra*:

Where, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. The defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient [ ] mere mistake, misunderstanding or lack of knowledge is insufficient however, and the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. Moreover, in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative

independent act of concealment upon which the plaintiffs justifiably relied.

*Meehan*, 870 A.2d at 921 (internal citations and quotations omitted). The fraudulent concealment doctrine has been specifically considered in the context of sexual abuse cases. In *Delaney v. Archdiocese of Philadelphia*, 924 A.2d 659 (Pa. Super. 2007), the court held that proof of "general and systematic fraudulent conduct on the part of the Archdiocesan [defendants]" — such as by systematically misrepresenting that certain priests were in "good standing", and systematically concealing knowledge of offending clerics misconduct — did not constitute an "affirmative act" for purposes of the fraudulent concealment exception. *Id.* at 662; *accord, Lazarski v. Archdiocese of Philadelphia*, 926 A.2d 459, 465 (Pa. Super. 2007) ("The general and systematic conduct alleged by the plaintiffs here . . . does not constitute an affirmative act for purposes of the fraudulent concealment exception and the plaintiffs have not [otherwise] shown that they relied on any affirmative act of concealment by the defendants which caused them to forego pursuit of their causes of action."). In *Meehan*, the Superior Court considered what would constitute fraudulent concealment in sexual abuse cases involving the Archdiocese:

> Had the plaintiffs (sometime after the abuse but before the running of the statute of limitations) questioned the Archdiocese about their abusers (for example, questions about their abusers' current location or history within the church), and had the Archdiocese affirmatively and independently acted in response to the plaintiffs' inquiries so as to mislead the plaintiffs into forgoing their suits, the fraudulent concealment exception would later allow the plaintiffs' suits.

*Meehan*, 870 A.2d at 922. This formulation of the rule has been the guide by which our courts have applied the fraudulent concealment doctrine to allegations of sexual abuse where the Archdiocese is a defendant. *See, Delaney, supra*, 924 A.2d at 663 (Holding that fraudulent concealment doctrine did not apply where plaintiff did not put forth any evidence that he inquired of the defendants regarding his potential causes of action, and did not allege that the defendants' "reassignment of Father Brzyski from St. Cecilia and listing him on 'sick leave' misled [plaintiff] or his parents into believing that the alleged sexual abuse did not occur, that it had not been committed by Father Brzyski, or that the alleged sexual abuse had not resulted in injury to [plaintiff]."); *E.J.M., supra*, 622 A.2d at 1395 (Holding that fraudulent concealment exception did not apply where plaintiff alleged that priest assured him that "the physical acts being performed on [him] were necessary for his spiritual development", and further noting that "a defendant's general assurances that a situation or condition being experienced by the plaintiff is normal do not rise to the level of fraudulent concealment where the plaintiff's own common sense should inform him that he has been injured."); *Aquilino, supra*, 884 A.2d at 1269 (Holding that fraudulent concealment doctrine did not apply where plaintiff asserted that offending priest "told him that his actions were sanctioned by God" and "made assertions about the

Archdiocese's knowledge of, and concealment of, the problem of sexual abuse among the clergy.").

The court agrees with defendants that the doctrine of fraudulent concealment does not toll the statute of limitations in this case. Plaintiff has neither alleged nor offered any evidence that plaintiff's decedent, or anyone acting on his behalf, inquired of the Archdiocese and/or St. Joseph Parish about Msgr. Mazzota's alleged acts of abuse during the period of limitations, and that these defendants "affirmatively and independently acted in response to [such] inquiries so as to mislead the [the decedent or someone acting on his behalf] into forgoing [ ] suit[]." *Meehan*, 870 A.2d at 922. Instead, the record indicates that the Archdiocese first became aware of plaintiff's decedent's allegations of abuse in March 2009 or April 2010, when the decedent reported the abuse to the Archdiocese's Victim Assistance Program. (*Compare*, Defs.' Ex. A, Compl. at ¶ 16 [March 2009], *with*, Defs.' Exs. C, E, F [April 2010], *see also*, Defs. Ex. D., Dep., 44: 2 -6). In addition, plaintiff's allegations that "the Archdiocese knew, had reason to know, or were otherwise on notice of the unlawful sexual conduct of [Msgr.] Mazzotta and/or other priests within the Archdiocese"; that "Defendants ... engaged in a policy of secrecy to protect the Archdiocese"; and that, as a result, plaintiff's decedent was "injured by the Archdiocese's affirmative acts of concealing its actual purpose to enable those who molested children and to attack those who reported abuse by [Msgr.] Mazzotta", (Defs.' Ex. A, Compl. at ¶¶ 30, 38 -39), fails to set forth facts that would support a finding of fraudulent concealment. Not only did plaintiff admit at her deposition that she was unaware of any evidence to support these allegations, even if she did come forth with such evidence, it would only be proof of "general and systematic fraudulent conduct" on the part of the defendants, and therefore would not constitute an "affirmative act" for purposes of the fraudulent concealment exception. *See Delaney*, 924 A.2d at 662; *Lazarski*, 926 A.2d at 465. Accordingly, the court must find that the fraudulent concealment doctrine does not apply, and that plaintiff's survival claim is time-barred as a matter of law.

B. Plaintiff's Wrongful Death Action is Time-Barred

Defendants have also moved to dismiss plaintiff's claim of wrongful death. In support, defendants' assert that the claim is barred as a matter of law because (1) the evidence of record establishes that plaintiff's decedent died of natural causes, and not as a result of the alleged sexual abuse or wrongful acts of defendants (*i.e.*, plaintiff cannot establish that defendants' acts were the "proximate cause" of plaintiff's decedent's death); and (2) like plaintiff's survival claim, plaintiff's wrongful death claim is also time-barred.

Pennsylvania's wrongful death statute provides that an action may be brought "to recover damages for the death of an individual caused by the wrongful act or neglect or . . . negligence of another . . . ". 42 Pa.C.S. § 8301(a). Unlike a survival action, "[a] wrongful death action does not compensate the decedent; it compensates the survivors for damages which they have sustained as a result of the decedent's death."

*Hatwood v. Hospital of the University of Pennsylvania,* 55 A.3d 1229, 1235 (Pa. Super. 2012) (citation omitted). The statute of limitations applicable to a claim of wrongful death is two years. *See,* 42 Pa.C.S. § 5524(b) ("An action to recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or... negligence of another" must be commenced within two years). This period of limitations beings to run on the date of death. *See, Sunderland v. R.A. Barlow Homebuilders,* 791 A.2d 384, 390 (Pa. Super. 2002) ("An action for wrongful death must be brought within two years of the death."). However, "if, at the time of death, the underlying negligence action would have been time-barred as to [the decedent], then the wrongful death cause of action is [also] time barred as to [the decedent's] relatives." *Moyer v. Rubright,* 651 A.2d 1139, 1141 (Pa. Super. 1994). In other words, a statutory beneficiary under Pennsylvania's wrongful death act has no cause of action for wrongful death if the underlying negligence would have been time-barred at the time of death. *See, Pisano v. Extendicare Homes, Inc.,* 77 A.3d 651, 657 (Pa. Super. 2013) (Explaining that only if the underlying negligence action is not time-barred at the time of death, does the statute of limitations applicable to a survival action have no affect on a wrongful death claim). This is because a "wrongful death action is derivative of the original tortious act which would have supported [a decedent's] own cause of action." *Moyer,* 651 A.2d at 1142.

For example, in *Moyer* a husband brought a wrongful death and survival action following his wife's death from a late cancer diagnosis. The wife's putative medical malpractice action accrued in September, 1986 (while she was still alive), wife passed away fourteen months later, in November, 1987, and her husband subsequently filed a survival action on behalf of her estate in November, 1989. The *Moyer* court held that the survival claim was time-barred because it was filed one year and two months after the two-year period of limitations began to run (September 1986 — November 1989). However, the court found that husband's wrongful death action was timely because, on the date of his wife's death in November, 1987, her potential medical malpractice claim (which had accrued fourteen months earlier, in September, 1986) was not time-barred. "Since [wife's] cause of action was viable at the time of her death and [husband's] wrongful death action was brought within two years of his wife's death, [husband's wrongful death action] was timely." *Id.* at 1143.

In this case, it is clear that plaintiff's wrongful death action is time-barred. The court has already determined that plaintiff's decedent's cause of action against defendants is not subject to tolling, and that his claim against them accrued, at the latest, on December 31, 1971, and expired two years later, on December 31, 1973. As a result, the decedent's cause of action at the time of his death (September 9, 2011) was not viable for failure to file within the period of limitations. Accordingly, the court finds that plaintiff's wrongful death action must be dismissed as untimely. *See, Moyer,* 651 A.2d at 1141.[a]

## C. Plaintiff's Loss of Consortium Claim is Time-Barred

Finally, defendants assert that the court must dismiss plaintiff's claim for loss of consortium because, like plaintiff's wrongful death and survival action, her consortium claim is barred by the statute of limitations. The court agrees.

In Pennsylvania, "a consortium claim is grounded on the loss of a spouse's services after injury." *Burns v. Pepsi-Cola Metro. Bottling Co.*, 510 A.2d 810, 812 (Pa. Super. 1986). As such, in actions involving claims for both loss of consortium and wrongful death, recovery on the consortium claim is limited to the time period between the spouse's injury and death. *Novelli v. Johns-Manville Corp.*, 576 A.2d 1085, 1087 (Pa. Super. 1990); *cf.*, *Linebaugh v. Lehr*, 505 A.2d 303, 305 (Pa. Super. 1986) ("[A] surviving spouse cannot maintain a separate cause of action for loss of consortium [for damages] resulting from the death of a spouse[,] but must instead recover damages for loss of the deceased spouse's society in an action for wrongful death."). Moreover, it has long been settled that an action for loss of consortium is "derivative" of the injured spouse's claim, "emerging from the impact of one spouse's physical injuries upon the other spouse's marital privileges and amenities." *Darr Const. Co. v. W.C.A.B. (Walker)*, 715 A.2d 1075, 1080 (Pa. 1998). "The consortium claim and the personal injury claim are [thus] interconnected; together, they represent the total, compensable damages . . . suffered as a result of the principal plaintiff's injury." *Scattaregia v. Shin Shen Wu*, 495 A.2d 552, 553 (Pa. Super. 1985). Given this, "[t]he limitations period for a wife's claim for loss of consortium [begins] to run on the same date that her husband's personal injury claim began to run." *Berardi v. Johns-Manville Corp.*, 482 A.2d 1067, 1071 (Pa. Super. 1984).

As noted, the statute of limitations on plaintiff's decedent's tort claim against defendants, brought by plaintiff in her survival action, began to run, at the latest, on December 31, 1971, and expired two years later, on December 31, 1973. Because the period of limitations on any consortium claim necessarily "ran with" the period of limitations on the survival claim, the court must find plaintiff's claim for loss of consortium is time-barred.[b]

## D. Conclusion

The evidence put forth in this case conclusively establishes that plaintiff's wrongful death and survival action, as well as plaintiff's claim for loss of consortium, are barred by the applicable statutes of limitations. While the court is certainly sympathetic to the claims of plaintiff, the court must remain faithful to the laws of this Commonwealth. Accordingly, defendants' motion is granted, and plaintiff's complaint as to defendant, The Archdiocese of Phtiladelphia, and defendant, St. Joseph Parish, is dismissed *with prejudice*.