NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3913
_____

CHRISTIE A. LEONARD,
                                    Appellant

v.

CITY OF PITTSBURGH;
NATHAN HARPER, in his individual capacity;
ADAM M. SKWERES, individually and an officer of the
Police Department of the City of Pittsburgh
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-13-cv-00455)
District Judge: Mark R. Hornak
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 9, 2014

Before:  FISHER, COWEN and TASHIMA,[*] *Circuit Judges*.

(Filed: June 30, 2014)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

_____

[*]The Honorable A. Wallace Tashima, Senior Circuit Judge for the Ninth Circuit
Court of Appeals, sitting by designation.

Appellant Christie Leonard appeals the dismissal of her claims by the United States District Court for the Western District of Pennsylvania against Appellees the City of Pittsburgh and Chief of Police Nathan E. Harper (collectively, "the City"), on the grounds that her suit is barred by the statute of limitations. Leonard argues that the statute of limitations was tolled by operation of: (1) the discovery rule; and (2) the doctrine of fraudulent concealment. For the reasons that follow, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

Leonard and Adam M. Skweres, who was at the time a police officer for the City, met in June 2008 after Skweres responded to a reported theft at the residence of Leonard's mother. After the perpetrator of the theft was arrested, Skweres compelled Leonard to appear in court to testify and threatened to arrest Leonard if she did not do so. On June 30, 2008, Leonard appeared in court with Skweres. After the proceedings, Skweres and Leonard had a short conversation outside the courtroom, during which Skweres demanded sexual favors from Leonard and threatened to retaliate if she did not comply. Skweres also threatened to write a negative letter to the Allegheny County Department of Children, Youth and Families ("CYF"), where Leonard was involved in a custody dispute over her three children. Skweres stated that if Leonard engaged in sexual

2

acts with him, he would write a positive letter on her behalf to CYF; if she refused, he would write a negative letter and she would lose custody of her children. When she refused, Skweres gave her his cell phone number and told her that she should take time to consider his proposal. He threatened her with arrest if she told anyone about their conversation.

Within a few months after the incident at the courthouse, Leonard spoke with CYF, her counselors, and members of her family about what had happened. After learning that Skweres had made similar threats to several other women, she reported his conduct to Detective Paul Beckert of the City of Pittsburgh Office of Municipal Investigations. Detective Beckert interviewed Leonard and administered two lie-detector tests, both of which Leonard passed.

It appears that little happened for nearly four years. In January 2012, Leonard was called by the Bureau of Police to give an additional statement regarding the June 2008 incident. When she reported to the station to provide her statement, she learned that the Federal Bureau of Investigation ("FBI") was also investigating Skweres's conduct. On February 17, 2012, Skweres was arrested by the Bureau of Police based on four separate incidents of misconduct, including the one involving Leonard. He was charged in the Allegheny County Court of Common Pleas, and, on March 11, 2013, Skweres pleaded guilty to sexually assaulting five different women. He is currently incarcerated.

3

On March 13, 2013, Leonard filed suit in the Court of Common Pleas, alleging that Skweres and the City deprived her of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution under 42 U.S.C. § 1983 and committed several state law torts. The City removed to federal court, and, on August 27, 2013, Judge Mark R. Hornak dismissed Leonard's claims against the City on the ground that her suit is barred by the statute of limitations.

## II.

The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331, and removal jurisdiction pursuant to 28 U.S.C. § 1441. We have jurisdiction to review the District Court's final order of dismissal pursuant to 28 U.S.C. § 1291.

We exercise plenary review over a district court's dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005) (citing *Gallo v. City of Phila.*, 161 F.3d 217, 221 (3d Cir. 1998)). When considering a Rule 12(b)(6) motion, we "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim for

4

relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III.

The statute of limitations for a claim under § 1983 is imported from the personal injury tort law of the state in which the injury occurred, which in Pennsylvania is two years. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); 42 Pa. Cons. Stat. Ann. § 5524(2)). Although she filed this suit more than four years after she concedes her cause of action arose, Leonard argues that we should consider her lawsuit timely because: (1) the statute of limitations was tolled under the discovery rule; and (2) the statute of limitations was tolled under the doctrine of fraudulent concealment.[1] We conclude that neither argument is persuasive, and will affirm.

A.

Federal law governs the accrual date of a cause of action under § 1983, *id.* (citing *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)), and under federal law a cause of action accrues "at the moment at which each of its component elements has come into being as a matter of objective reality, such that an attorney with knowledge

---

[1] Leonard's brief also puts forth arguments regarding her underlying claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). While she clarifies in her reply brief that the arguments are presented only as "essential context for her claims against Appellees," Appellant's Reply Br. at 2, we note that because the District Court did not pass on those claims, we will not do so either.

of all the facts could get it past a motion to dismiss for failure to state a claim." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 150 (3d Cir. 2011). The parties do not dispute that Leonard's cause of action accrued in June 2008, at the time of her encounter with Skweres.

While federal law governs the accrual date, we generally apply state law tolling principles in a § 1983 case. *Kach*, 589 F.3d at 639. Under Pennsylvania's formulation of the discovery rule, the statute of limitations will toll "'where the existence of the injury is not known to the complaining party and such knowledge cannot reasonably be ascertained within the prescribed statutory period.'" *Meehan v. Archdiocese of Phila.*, 870 A.2d 912, 919 (Pa. Super. 2005) (quoting *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 288 (Pa. Super. 1997)).

Leonard argues that although she was aware in June 2008 that she suffered an injury at Skweres's hands, the limitations period should have been tolled until January 2012 because it was only then that she discovered the basis of her *Monell* claim against the City: the inaction by the Bureau of Police to properly investigate her claims and its failure to follow psychological examination procedures when hiring Skweres in 2005. Leonard relies on our decision in *Bohus v. Beloff*, 950 F.2d 919 (3d Cir. 1991) (applying Pennsylvania law). In *Bohus* we applied the discovery rule to toll the statute of limitations for a plaintiff in a medical malpractice suit until she became aware of the extent of her injuries. *Id.* at 926. The plaintiff's injury occurred during surgery, but it

6

was not reasonably possible for her to discover that injury until some time had passed because the surgeon had told her that there would be a period of recuperation during which the discomfort and pain would continue, a belief that was supported following examination by several other physicians. *Id.* at 922-23. It was not until she consulted with an orthopedic surgeon that she discovered her pain was not the result of normal post-operative healing, but of negligently performed surgery. *Id.* at 923.

Leonard asserts that, like the plaintiff in *Bohus*, she could not reasonably have discovered her injury until January 2012, when she learned that the FBI was investigating Skweres's conduct. But *Bohus* analogizes poorly to the facts before us. The injury that Leonard suffered was her mistreatment by Skweres, which, unlike the plaintiff in *Bohus*, she became aware of as it occurred. Leonard construes the City's purported misconduct as causing a wholly separate, independent injury from that inflicted by Skweres. In support of this argument, she attempts to distinguish *Meehan*, on which the District Court relied, but her argument is unpersuasive.

*Meehan* involved allegations that the Archdiocese of Philadelphia engaged in a decades-long cover up of sexual abuse. 870 A.2d at 920. Conceding that at the time of their abuse they knew they had been injured, knew the identities of their abusers, and knew that their abusers were employees of the Catholic Church, the plaintiffs nonetheless claimed that they did not know that the Church was a potential cause of their injuries until 2002, thus tolling the statute of limitations until that time. *Id.* In rejecting this

7

argument, the Pennsylvania Superior Court differentiated between "primary" and "secondary" causes of injury, with the primary cause of injury being the one that begins the running of the statute of limitations. *Id.* ("Plaintiffs are really claiming that they were unaware, not of their injury, but of a secondary cause of their injury (the primary cause being the individual who committed the abuse.)"). The discovery rule tolls the statute of limitations when the complaining party, exercising reasonable diligence, could not have ascertained the fact of his injury within the limitations period. *Id.* at 919. That a cover-up may have been a secondary cause of the abuse did not change the fact that the injuries that the plaintiffs alleged was abuse, and they were aware of this injury at the time it occurred.

So too here. The injuries Leonard alleges involving the City are secondary to the true injury – the actions taken by Skweres. Leonard knew of her injury by Skweres, and – importantly – she knew that he was a police officer employed by the City in June 2008. Exercising reasonable diligence, she could have discovered at that time a potential *Monell* claim against the City. Thus, she is not entitled to a tolling of the limitations period under the discovery rule.

### B.

As an alternative argument, Leonard contends that she is entitled to tolling of the statute of limitations under the doctrine of fraudulent concealment. Under Pennsylvania's fraudulent concealment rule, the statute of limitations is tolled "where

'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 516 (3d Cir. 2006) (interpreting Pennsylvania law) (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)). "'[I]n order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff[] justifiably relied.'" *Lazarski v. Archdiocese of Phila.*, 926 A.2d 459, 465 (Pa. Super. 2007) (second alteration in original) (quoting *Kingston Coal*, 690 A.2d at 290).

Here, Leonard argues that because the City did not inform her of Skweres's psychological examination history and because Skweres's conduct did not result in an actual arrest until 2012, the City's "silence in this instance constitutes fraud." Appellant's Br. at 22. While we have recognized that a party's silence could in some circumstances constitute fraudulent concealment, such a situation occurs "only where there is an affirmative duty to disclose because of a fiduciary relationship between the parties or a similar relationship of trust and confidence." *Mest*, 449 F.3d at 517. Leonard claims without citation that the relationship between a private citizen and the police is one such relationship, but this assertion is inconsistent with Pennsylvania law. *See, e.g., People United to Save Homes v. Dep't of Env't Prot.*, 789 A.2d 319, 327 n.14 (Pa. Commw. Ct. 2001) ("[U]nder the public duty doctrine, there is no duty owed to a particular person by

9

a municipality or other governmental body absent a special relationship." (internal citation omitted)).

Leonard's complaint fails to allege any affirmative acts of concealment by the City, either of Skweres's misconduct, his employment relationship with the City, or of the facts underlying Leonard's claim for *Monell* liability. Nor has she alleged facts that would suggest she and the City had the type of special relationship through which the City's silence could constitute an act of fraudulent concealment. Accordingly, we reject her argument that the statute of limitations was tolled in this case by the doctrine of fraudulent concealment.

IV.

For the reasons set forth above, we will affirm the District Court's grant of the motion to dismiss.